HUNKER et al., Appellees,

v.

WHITACRE–GREER FIREPROOFING COMPANY et al., Appellants.

[Cite as *Hunker v. Whitacre–Greer Fireproofing Co.*, 155 Ohio App.3d 325, 2003-Ohio-6281.]

Court of Appeals of Ohio,
Seventh District, Carroll County.

No. 03–CA–784.

Decided Nov. 17, 2003.

Bruce E. Smith and Robert P. Campbell, for appellees.

Black, McCuskey, Souers & Arbaugh and Thomas W. Connors, for appellants.

GENE DONOFRIO, Judge.

{¶ 1} Defendants-appellants, Whitacre–Greer Fireproofing Company and John B. Whitacre Jr., appeal from a Carroll County Common Pleas Court decision granting an injunction prohibiting them from hunting fox on a certain parcel of land because of an easement in favor of plaintiffs-appellees, Robert L. Hunker and the Gully Ridge Hounds.

{¶ 2} In 1994, Hunker formed a hunting club known as the Gully Ridge Hounds. On May 18, 1995, appellants granted Hunker permission to hunt on 2,000 acres of their land in Carroll County. Appellants, as grantors, and Hunker, as grantee, entered into a recreational easement agreement relating to the 2,000 acres of land. The agreement states in part:

{¶ 3} "(1) Subject to the terms and conditions set forth in this Agreement, Grantors grant to Grantee, and the Gully Ridge Hounds ('the Riding Club'), and their respective heirs, successors, assigns, invitees, and permittees, the non-exclusive right, privilege, and permission ('the Easement'), to enter upon and use the real property of Grantors, which is described in Exhibit 'A' and Exhibit 'B' attached to this Agreement ('the Premises'), for the sole purpose of horseback riding, fox hunting with horses and hounds, and hill topping with horses and horse-drawn vehicles and four-wheel vehicles (or motor vehicles). Grantee shall not use the Premises for purposes other than those specified above."

{¶ 4} Appellees thereafter engaged in fox hunting activities on the property from 1995 to the present. Whitacre was a member of the Gully Ridge Hounds until early 2002. In late December 2001, Hunker advised the hunt club that he would no longer be able to underwrite the fox hunting activities and therefore someone else would have to finance the activities. In response to this announcement, the group divided. Part of the group formed the Magnolia–Waynesburg Hunt, which Whitacre joined. The rest of the group formed another hunt club under the name of the Gully Ridge Hounds, which Hunker joined. The new Gully Ridge Hounds attempted to conduct fox hunting activities on the 2,000 acres of land covered by the agreement, thus precipitating the filing of this case.

{¶ 5} Appellees filed a complaint on September 20, 2002, seeking injunctive and declaratory relief regarding the recreational easement to use appellants' property for fox hunting. They also sought a preliminary injunction restraining appellants from interfering with their rights under the agreement. Appellants filed a joint answer and counterclaim seeking similar injunctive and declaratory relief and also sought a preliminary injunction. The court granted appellees' motion for a preliminary injunction, which excluded appellants from using the property for fox hunting during the pendency of the case. Trial was held on December 27, 2002, and the trial court granted a permanent injunction in favor of appellees on December 30, 2002. Appellants filed their timely notice of appeal on January 23, 2003.

{¶ 6} Appellants raise two assignments of error, the first of which states:

{¶ 7} "The trial court erred in determining that a contract provision granting 'the non-exclusive right * * * to use * * * property * * * for * * * fox hunting' was ambiguous."

{¶ 8} Appellants assert that the question before this court is: What is the ordinary and commonly understood meaning of the agreement language providing "the non-exclusive right * * * to use * * * property * * * for * * * fox hunting." Appellants argue that a non-exclusive right is commonly understood to mean a right that does not exclude others from the same right. Accordingly, appellants continue, the commonly understood meaning of the words granting a non-exclusive right to fox hunt would mean that such right does not exclude appellants or others from fox hunting.

{¶ 9} Appellants note that at trial appellees argued that the phrase "non-exclusive right to fox hunt" was merely a recognition of the fact that previous easements had been granted that encumbered the premises, such as oil and gas leases, and that the defendants contemplated that they might grant future easements to generate an economic benefit to them. Appellants, however, contend that because the phrase "non-exclusive" adverbially modifies only "the right to fox hunt," the phrase is not reasonably susceptible of appellees' interpretation that it somehow relates only to present or future oil, gas, or other easements.

{¶ 10} For these reasons, appellants conclude that the language regarding the non-exclusive right to fox hunt was not reasonably susceptible of two different meanings, particularly the meaning offered by appellees, and that the trial court therefore erred in permitting parol evidence for the purpose of construing that phrase.

{¶ 11} The construction of written contracts and conveyances is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403,

374 N.E.2d 146, paragraph one of the syllabus. We review questions of law de novo. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

{¶ 12} Where terms in an existing contract are clear and unambiguous, a court cannot create a new contract by finding an intent not expressed in the clear language employed by the parties. *Long Beach Assn., Inc. v. Jones* (1998), 82 Ohio St.3d 574, 577, 697 N.E.2d 208, citing *Alexander,* 53 Ohio St.2d at 246, 7 O.O.3d 403, 374 N.E.2d 146. " 'Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.' " *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 212, 519 N.E.2d 1380, quoting *Alexander,* 53 Ohio St.2d. at 245–246, 7 O.O.3d 403, 374 N.E.2d 146. Language in a contract is ambiguous only if it is reasonably susceptible of two or more meanings. *McClorey v. Hamilton Cty. Bd. of Elections* (1998), 130 Ohio App.3d 621, 625, 720 N.E.2d 954, citing *George H. Olmsted & Co. v. Metro. Life Ins. Co.* (1928), 118 Ohio St. 421, 426, 161 N.E. 276.

{¶ 13} In the present case, the trial court took careful effort to analyze the extrinsic evidence the parties presented to conclude that appellees held an exclusive right to fox hunt. But we need not reach this analysis because the conveyance language is not ambiguous. Extrinsic evidence is admissible to ascertain the intent of the parties only when a contract is unclear or ambiguous, or when circumstances surrounding an agreement give the plain language special meaning. *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 314, 667 N.E.2d 949.

{¶ 14} The phrase, "non-exclusive right, privilege, and permission * * *, to enter upon and use the real property of Grantors, * * * for the sole purpose of horseback riding, fox hunting with horses and hounds, and hill topping with horses and horse-drawn vehicles and four-wheel vehicles" is not ambiguous. In this phrase, the words "non-exclusive right" to fox hunt are clear. We must look at these words using their ordinary, everyday meaning. "Exclusive," used as an adjective or adverb, means "excluding or having power to exclude," "limiting or limited to possession, control, or use by a single individual or group," "excluding others from participation," or "snobbishly aloof." Webster's Collegiate Dictionary (10th Ed.1998) 404. The prefix "non" means, "not: other than: reverse of: absence of." Webster's Collegiate Dictionary (10th Ed.1998) 788. Thus, the common meaning of "non-exclusive" right to fox hunt is that other people can fox hunt because the holder of the non-exclusive right does not have the power to exclude others from fox hunting.

{¶ 15} Appellees argue that the "non-exclusive" language is reasonably susceptible of two constructions: the first, as espoused by appellants, and the second

being simply a recognition that other easements were already in place as encumbrances on the property or that others were contemplated by appellants in the future. However, the easement language, without any extrinsic evidence does not lead to this conclusion. It is only upon the examination of extrinsic evidence that one might reasonably conclude that the language is susceptible of two or more interpretations. Within the agreement itself there is no mention of other easements, such as oil or gas leases, as appellees suggest. And since we are not to consider extrinsic evidence unless the language in the conveyance is reasonably susceptible of two or more meanings, we cannot conclude that the "non-exclusive right * * * for * * * fox hunting" is ambiguous. Accordingly, appellants' first assignment of error has merit.

{¶ 16} Appellants' second assignment of error states:

{¶ 17} "The trial court erred by interpreting a non-exclusive easement to use property for fox hunting, to exclude the owner and his assigns from using the same property for fox hunting."

{¶ 18} In its judgment entry, the trial court stated:

{¶ 19} "Whether two hunt clubs can schedule joint 'use' of the 2,000 acres is not relevant. The recreational easement agreement at issue, as construed, precludes joint use and joint scheduling. It is a moot point.

{¶ 20} "However, the weight of the trial testimony supports a finding that two clubs cannot physically 'hunt' the 2,000 acres together on any regular basis as such overuse of such a limited area would diminish, or totally eliminate, the quarry being hunted. Any 'second hunt' would amount to 'unreasonable' interference with plaintiffs' rights."

{¶ 21} Assuming that the right transferred to appellees in the agreement was a non-exclusive right to fox hunt, appellants argue that the trial court erred in determining that any fox hunting by appellant was unreasonable per se under Section 8 of the agreement, which provides:

{¶ 22} "(8) Grantors and their successors and assigns shall have the full right and privilege to use the Premises, *provided that Grantors shall not unreasonably interfere with the rights granted to Grantee hereunder.*" (Emphasis added.)

{¶ 23} Appellants contend that this section was clearly intended to demonstrate that they retained the full right to use their own property while not unreasonably interfering with the rights granted to appellees. If the right to fox hunt is non-exclusive, appellants continue, it cannot be unreasonable to allow two competing groups to fox hunt, because a non-exclusive right to fox hunt clearly contemplates that the owner also has the right to fox hunt. Appellants concede that there is some "gray area" as to how much they can fox hunt before they unreasonably

interfere with appellees' right to fox hunt. However, appellants urge that the language defining the easement clearly contemplates that it is not exclusive, and that both they and appellees have the right to fox hunt. Accordingly, appellants conclude, the issue cannot be resolved by simply saying, as the trial court did, that too much fox hunting would eliminate the quarry being hunted, and that therefore appellants may not engage in fox hunting.

{¶ 24} As stated above, the trial court concluded that the easement was exclusive. Thus, appellants could not fox hunt on the property. This should have ended the trial court's decision. Instead, the court went on to issue an advisory opinion regarding what the evidence demonstrated *if* it had found that the easement was non-exclusive. The court should not have reached this issue. The question of whether appellants have unreasonably interfered with appellees' easement has not yet arisen. Appellants have not, to this date, unreasonably interfered with appellees' non-exclusive right to fox hunt. Because appellees possess a non-exclusive right to fox hunt, all hunting by appellants cannot be said to be an unreasonable interference. Accordingly, appellants' second assignment of error has merit.

{¶ 25} For the reasons stated above, the trial court's decision is hereby reversed, and the permanent injunction is lifted.

Judgment reversed
and injunction lifted.

VUKOVICH, J., concurs.

WAITE, P.J., and GENE DONOFRIO, J., concur separately.

WAITE, Presiding Judge, concurring.

{¶ 26} Although I agree with most of the reasoning used in the majority opinion, I believe that we must also resolve whether there has been an unreasonable interference with appellees' nonexclusive right to hunt on appellants' property. In so doing, it is important to review the differences between an exclusive and nonexclusive easement.

{¶ 27} The right to hunt or fish on property owned by another is given through a type of easement known as a profit à prendre. 1 Restatement of the Law 3d, Property (2000) 12, Section 1.2. "A profit à prendre is an easement that confers the right to enter and remove [such things as] timber, minerals, oil, gas, game, or other substances from land in the possession of another." Id.

{¶ 28} A profit à prendre, as well as most other types of easements, may be exclusive or nonexclusive. These are legal terms of art encompassing (1) the

persons who may be excluded and (2) the uses or area from which those persons may be excluded. Id. at 14, Section 1.2.

{¶ 29} "At one extreme, the holder of the easement or profit has no right to exclude anyone from making any use that does not unreasonably interfere with the uses authorized by the servitude. For example[,] the holder of a private roadway easement in a public road has no right to exclude anyone from using the road. * * * At the other extreme, the holder of the easement or profit has the right to exclude everyone, including the servient owner, from making any use of the land within the easement boundaries. In between are easements where the servitude holder can exclude anyone except the servient owner and others authorized by the servient owner (usually called 'nonexclusive easement') * * *." Id.

{¶ 30} Unless the easement agreement states otherwise, the servient owner may make any use of the property that does not unreasonably interfere with the enjoyment of the servitude. 1 Restatement of the Law 3d, Property (2000) 581, Section 4.9. "All residual rights remain in the possessory estate—the servient estate." Id. at 582; see, also, 1 Thompson on Real Property (1980) 472, Section 135.

{¶ 31} "In the absence of detailed arrangements between them, it is assumed that the owner of the servitude and the holder of the servient estate are intended to exercise their respective rights and privileges in a spirit of mutual accommodation." Id.

{¶ 32} The terms of the fox hunting easement in the instant case must be interpreted with an understanding of the aforementioned commonly accepted legal principles. Based on these principles, there is no ambiguity in the language of the easement agreement. Appellants granted a nonexclusive easement for the purpose of fox hunting (among other things), and there were no restrictions placed on appellants' residual rights except for the promise not to "unreasonably interfere with the rights granted to" appellees. This latter provision is already implied in the very grant of the easement in the first place, and does not materially change the nature of the easement. Seeing that the easement agreement does not place any other restrictions on appellants' use of their property, the law presumes that appellants, as the grantors of the easement, have reserved the right to fox hunt on their property or to issue other nonexclusive easements for fox hunting, within reasonable limits.

{¶ 33} Appellees' attempt to construe the terms of a nonexclusive easement so that it actually establishes an exclusive easement must fail for two reasons. First, as the majority states, there is no ambiguity in the word "nonexclusive." The common legal meaning of the word allows appellants to continue to fully utilize their property, while at the same time making reasonable accommodations

for appellees' right to hunt on the property. Second, appellees' attorney drafted the easement document, and it is an axiomatic rule of contract interpretation that "[a]ny ambiguities in the document setting forth the rights and responsibilities of each party must be construed against the drafter of the document." *Fletcher v. Fletcher* (1994), 68 Ohio St.3d 464, 471, 628 N.E.2d 1343. Even if the contract contained the ambiguity asserted by appellees, we could not interpret such ambiguity in appellees' favor.

{¶ 34} Once we have determined that the agreement does not contain an exclusive easement, our review is not ended, because there remains an open question as to whether appellants have unreasonably interfered with appellees' right to fox hunt. The trial court determined, as an alternative legal basis for his decision, that appellants unreasonably interfered with appellees' right to fox hunt. Whether a person's actions are reasonable or unreasonable is generally a question of fact to be determined by the trier of fact. See, e.g., *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 33, 697 N.E.2d 610. A reviewing court will usually defer to a lower court's factual determinations if they are supported by competent, credible evidence. *State ex rel. Fleming v. Rocky River Bd. of Edn.* (1997), 79 Ohio St.3d 200, 205, 680 N.E.2d 981.

{¶ 35} The majority opinion affirmatively declares that "[a]ppellants have not, to this date, unreasonably interfered with appellees' nonexclusive right to fox hunt." It appears from this statement that the majority has implicitly concluded that appellants' actions were reasonable. While I agree with the majority's conclusion, I find it necessary to explain this decision.

{¶ 36} The trial court found that it was physically impossible for two groups to regularly fox hunt on appellants' property because it would "diminish, or totally eliminate, the quarry being hunted." On this basis, the trial court held that it would be unreasonable for anyone other than appellees to fox hunt on appellants' property. The trial court has fundamentally misunderstood what the parties actually agreed in their easement. Appellants did not agree to supply live foxes or well-rested foxes or, for that matter, any foxes at all. The easement agreement merely allows appellees the right to hunt for any foxes that happen to be on appellants' property.

{¶ 37} The holder of a servient estate generally has no duty to the beneficiary of an easement or profit to maintain the condition of the servient estate. 1 Restatement of the Law 3d, Property (2000) 631, Section 4.13. There is nothing in the easement language that created a duty for appellants to maintain foxes on their property, or to keep the foxes in prime condition for the enjoyment of the hunters. There is nothing in the easement language guaranteeing that appellees would find any foxes on the property. Appellees' attempt to imply such duties and terms adds new elements to the easement to which the parties did not agree.

{¶ 38} Appellees' allegation that appellants unreasonably interfered with their right to hunt presumes that some right was actually curtailed by appellants. Appellees must prove at trial that appellants prevented them from hunting on their property. There is nothing in the record indicating that appellants prevented appellees from entering the property at any time for the purpose of fox hunting. Therefore, the record does not contain any competent or credible evidence supporting the trial court's decision, and for this reason, I agree with the majority decision. The trial court's judgment must be reversed and the permanent injunction vacated, and judgment granted to appellants.

GENE DONOFRIO, J., concurs in the foregoing concurring opinion.