OPINION
{¶ 1} Plaintiffs-appellants Emery Martin and his family appeal the decision of the Carroll County Common Pleas Court which granted the motion to dismiss filed by defendants-appellees Lake Mohawk Property Owner's Association and Robert and Nancy Mizerik. The dismissal was entered as per Civ.R. 41(B)(2) after the Martins' presented their case in chief. The threshold issue on appeal concerns the interpretation of a depth restriction in the Association's "building code." The Martins also argue that the court should have granted a preliminary and a permanent injunction and should have allowed their witness to give expert testimony on the diminution in value of their residence.
 {¶ 2} For the following reasons, we hold that the trial court failed to apply the disputed restriction in the manner required by its plain terms. The court's decisions on the preliminary and permanent injunctions were not erroneous. However, due to the plain language of the restriction and the court's preclusion of testimony on damages combined with a refusal to permit the plaintiffs' case to run more than three hours, this case is reversed and remanded for a new hearing on damages for violation of the depth restriction.
 STATEMENT OF THE FACTS {¶ 3} Five members of the Martin family are owners of a house on Lot 1043 which fronts Lake Mohawk in Carroll County. The lake's high water line is 154 feet from the closest point of the Martin's home. The Mizeriks purchased Lot 1042 in order to construct a lake front residence. Both lots are 295 feet deep. Lot 1041, on the other side of the Mizeriks' new property, is vacant.
 {¶ 4} The Mizeriks wanted to build an L-shaped house that was physically sixty-two feet deep at its deepest point. And, they wished to build it a mere ninety-four feet from the lake's high water mark; more than fifty feet closer to the lake than the Martins' house. However, the Association's building code contains a restriction that applies to all structures and reads as follows:
 {¶ 5} "Any new residence or remodeling must be positioned on the property so as to vary 10 feet or less in depth from it's [sic] neighboring residences. See exhibit for formula." Section (A)(6)(c).
 {¶ 6} The exhibit incorporated into this restriction is entitled, "New Residence Depth." A formula is listed for lake front property in order to determine the minimum distance from the nearest part of the structure to the high water line. The example use of the formula assumes that there are two existing houses, House A and House C, and solves for the new house to be constructed between the existing houses. An example shows House A at 80 feet from the high water line and House C at 100 feet from the high water line. Using these figures, the formula proceeds: House A 80 + House C 100 = 180/2 = 90 — 10 = 80, meaning the new house must be at least 80 feet from the high water line.
 {¶ 7} In February 2003, the Mizeriks wrote a letter to the Association noting that the Association's building inspector did not believe their plans fit with the present 10 foot allowance. They thus asked for a variance. In April 2003, the Association responded that a variance would not be necessary as long as the Mizeriks constructed their house at least 92 feet from the high water line of the lake. To arrive at this number, the Association applied the formula even though Lot 1041 was vacant. The Association imputed a distance from the water of 50 feet for the vacant lot merely because that is the absolute minimum distance a house can be from the water line as per the lake's warranty deed. Thus, their application of the formula proceeded as follows: "154 ft + 50 ft = 204/2 = 102 — 10 = 92 ft."
 {¶ 8} A copy of the Association's response was sent to the Martins. An attorney for the Martins immediately responded that the formula had been misconstrued and asked that they be permitted to present their objections at a board of directors meeting. The parties met with the community manager at the building site in May 2003. In a follow-up letter, the Martins advised that they were considering the request to compromise on the shorter minimum distance from the water line but they wanted to see plans to determine how high the Mizeriks' house would rise in their view.
 {¶ 9} Regardless, a building permit was issued on May 3, 2004, and the Mizeriks began construction. When the Martins realized that the Mizeriks still intended to place the closest portion of their house 94 feet from the high water mark, they complained. The Association ordered that construction stop, but then changed its mind after complaints from the Mizeriks' builder.
 {¶ 10} On May 14, 2004, Emery and Patricia Martin filed a complaint for a preliminary and permanent injunction against the Mizeriks and the Association. On June 9, 2004, the court held a hearing on the request for a preliminary injunction. The Martins called the Association's building inspector to testify. When questioned about the restriction containing the ten foot depth variation, he stated:
 {¶ 11} "I have applied the formula to all residences. * * * You can't go by the formula and the paragraph. They, they would sort of contradict each other. Quite honestly, I didn't even know it said 10 feet or less." (06/09/04 Tr. 17).
 {¶ 12} Due to the court's time restraints, this was the only witness. The court concluded that it had not heard enough to grant or deny a preliminary injunction but they were out of time for the day. (06/09/04 Tr. 44). The court then advised that it was combining the preliminary injunction hearing with an accelerated merits hearing for the permanent injunction as per Civ.R. 65(B)(2). This hearing was set for June 16, 2004.
 {¶ 13} Various occurrences then delayed the accelerated hearing for five months. For instance, the Martins sought to amend their case to a class action since the inspector stated that he does and will continue to ignore the restriction regarding ten foot depth variation. The Mizeriks filed a motion to dismiss or for summary judgment. A motion hearing was scheduled and then continued on the request of the Association. That motion hearing was held on June 30, 2004. The court denied the class certification and overruled the motion to dismiss. The defense then filed a successful motion to join the Martins' children who were discovered to be joint owners of the property. On August 3, 2004, the Martins amended their complaint to name their children as fellow plaintiffs. New answers were filed. In September 2004, the case was set for trial on November 3 but was later continued on request of the Association.
 {¶ 14} Finally, the trial was held on November 19, 2004. After the Martins presented their case in chief, the defense filed a Civ.R. 41(B)(2) motion to dismiss. The court orally granted the motion. The court journalized its dismissal in a November 29, 2004 judgment entry from which this appeal was taken. The Martins had previously requested findings of fact and conclusions of law, which were filed by the court on January 10, 2005. See Civ.R. 41(B)(2) (the court shall make findings of fact and conclusions of law if requested by a party after dismissal in a non-jury action).
 {¶ 15} When addressing the permanent injunction, the court found it significant that the Mizeriks' residence was essentially complete and that the Martins failed to seek a temporary restraining order and never obtained the preliminary injunction. The court noted that it would not order a house to relocate where provisional relief could have been timely achieved if proper. The court concluded that the issuance of a permanent injunction at this time would be inequitable due to the passage of time and change in circumstances.
 {¶ 16} In addition, the court concluded that the formula in the code had been properly applied and that it incorporated the ten foot depth restriction. The court noted that the variance committee and the building inspector independently arrived at decisions that the placement complied with the formula. Thus, the court found the actions for permanent injunction and for monetary damages both failed. The Martins are the appellants herein, and the Mizeriks and the Association are the appellees.
 Civ.R. 41(B)(2) DISMISSAL {¶ 17} First, we shall explain the effect of a Civ.R. 41(B)(2) dismissal. The Mizeriks' appellee's brief purports to set forth the trial court's standard when reviewing this motion to dismiss as follows: when dismissing for failure to state a claim it must appear beyond doubt from viewing the evidence that the plaintiff can prove no set of facts entitling him to relief. However, the Mizeriks' statement of the law is incorrect.
 {¶ 18} As the Association's brief points out, a Civ.R. 41(B)(2) dismissal in a civil non-jury trial is more akin to judgment after trial than to an actual dismissal. Civ.R. 41(B)(2) provides that after the plaintiff in a bench trial completes his presentation of evidence, the defendant can move for dismissal on the ground that the facts and law show no right to relief. The court can then determine the facts and render judgment. Contrary to the Mizeriks' short argument, the court is not limited to viewing the complaint as in cases of a Civ.R. 12(B)(6) dismissal.
 {¶ 19} Rather, in a trial without a jury, Civ.R. 41(B)(2) allows the trial court to determine the facts by weighing the evidence and to render judgment against the plaintiff at the close of plaintiff's case. Leseganich v. United Steel Workers ofAmerica (Sept. 9, 1987), 7th Dist. No. 86CA128. The trial court's dismissal of a case on this ground generally will not be set aside unless erroneous as a matter of law or against the manifest weight of the evidence just as if the entire trial proceeded. Id. The premise behind the rule is if the court in a bench trial disbelieves the plaintiff's facts or disagrees with the plaintiff's urged application of the law, then there is no reason to hear the defendant's case. Thus, we continue our review as in any case where judgment is rendered for the defendants after a regular trial on the merits.
 THRESHOLD ISSUE {¶ 20} The main issue we must consider is whether the Mizeriks' house was built in violation of Section (A)(6)(c) of the building code. This issue is presented under the Martin's second assignment of error when discussing the propriety of a permanent injunction. But, it seems best to conduct our de novo review of this legal issue first.
 {¶ 21} The Martins argue that the court erred as a matter of law in its interpretation and application of the Association's building code. They urge that the Mizeriks' construction at a depth from the high water line varying more than ten feet from their house is a clear violation of Section (A)(6)(c) of the building code. The Martins contend that Section (A)(6)(c) is an unambiguous restriction which should be applied, not construed. Thus, they urge that the court should not have considered the interpretation and past practice of the zoning inspector and the variance committee. They note that the formula deals with distance from the high water line where there are two neighboring houses and does not provide for a situation where there is only one neighboring house. They conclude that the formula cannot be read to totally wipe out the concise ten foot depth restriction.
 {¶ 22} The Association counters that the formula, which is incorporated into the restriction, cannot be totally ignored. They argue that the ten foot depth restriction is a component of the formula and that the formula is to be applied in all cases. The Mizeriks respond to all three assignments of error with a mere one page of general arguments and do not add anything of substance to this issue.
 {¶ 23} As in the case of all contracts, deeds or other written instruments, the construction of the writing is a matter of law which is reviewed de novo. Long Beach Assn., Inc. v.Jones (1998), 82 Ohio St.3d 574, 576. If the writing is clear and unambiguous, it shall be applied as written, rather than interpreted or constructed. LJ Minor Corp. v. Breitenbach
(1996), 77 Ohio St.3d 168, 171.
 {¶ 24} If a portion of a writing is unclear and can reasonably be construed in more than one contradictory manner, it is said to be ambiguous. Hunker v. Whiteacre-Greer FireproofingCo., 155 Ohio App.3d 325, 2003-Ohio-6281, ¶ 12. It is only where the writing is ambiguous that extrinsic evidence can be used to determine the intended meaning of the writing. Id. at ¶ 13. In which case, the court could inquire the object sought to be attained by the disputed portion of the writing, the circumstances under which it was written, the history of its enactment, any former provision substituted by this provision, the effect and consequences of each construction, and any administrative construction. See R.C. 1.49 (setting forth rules of statutory construction for ambiguous laws, which applies nicely in many other interpretation settings).
 {¶ 25} Where language in a real property restriction is ambiguous, courts are encouraged to adopt the construction which least restricts the free use of the land. Gennari v.Andres-Tucker Funeral Home, Inc. (1986), 21 Ohio St.3d 102, 103;Houk v. Ross (1973), 34 Ohio St.2d 77, ¶ 2 of syllabus, 90. In any event, if the language in a real property restriction is clear, the court must simply enforce it as written. ClevelandBaptist Assn. v. Scovil (1923), 107 Ohio St. 67, 72. See, also,Haller v. Hickory Creek Homeowners Assn. (Dec. 14, 2001), 1st Dist. No. C-010332; Catawba Orchard Beach Assn., Inc. v.Basinger (1996), 115 Ohio App.3d 402, 408 (6th Dist.).
 {¶ 26} We are faced with the question of whether the clear language of the first sentence in Section (A)(6)(c) is made ambiguous by the last sentence which directs the reader to the formula in an exhibit and where that formula allows a variance of more than a ten foot depth differential. In doing so, we must determine whether the formula was properly applied where there was an existing house in only one of the neighboring lots.
 {¶ 27} It seems clear that the formula is only to be applied where there are existing houses on both sides of the new house. There is no need to resort to the formula to apply a ten foot depth restriction when there is only one neighbor. A conflict in applying the ten foot rule only arises, giving rise to the need for a formula, when two houses on either side of a vacant lot have diverse depths making it impossible to comply with the ten foot rule as to both neighbors. The restriction is clear. The formula and the example include the depth of two neighboring residences. Here, there is no neighboring residence for the "House C" blank in the formula and, thus, the formula is inapplicable.
 {¶ 28} Once again Section (A)(6)(c) provides: "Any new residence or remodeling must be positioned on the property so as to vary 10 feet or less in depth from it's [sic] neighboring residences. See exhibit for formula." It explicitly states neighboring "residences," and the formula explicitly states "House" C. There is no neighboring "residence" or "house" on Lot 1041. Thus, the party building on Lot 1042 must only consider their existing neighbor's residence on Lot 1043.
 {¶ 29} Imputation of a placement of fifty feet from the high water line for a nonexistent residence is clearly improper and disingenuous. (In fact, if the owner of Lot 1041 built before the Mizeriks, there is no indication he could have built a mere fifty feet from the water; rather, an exhibit seems to show that Lot 1041 has an existing neighbor on the far side requiring a much further setback for Lot 1041, even using the Association's misguided formula application.)
 {¶ 30} The formula specifically contains two existing "house[s]." The general existence of a fifty foot minimum setback from the lake does not give rise to the ability of the building party with a vacant lot on one side to pretend that his nonexistent neighbor has a house with a mere fifty foot setback and insert this fifty foot figure into a formula created to compromise where there are existing neighboring dwellings on both sides. The application advanced by the Association and the Mizeriks renders the ten foot rule nonexistent; merely because the number 10 is subtracted in the formula does not make the ten foot rule merged out of existence.
 {¶ 31} In fact, rather than merely finding the formula inapplicable where there is only one neighbor, the formula could be properly applied to arrive at the same conclusion as ignoring it. The formula with only one residence as applied to this case would actually be: 154 + 0 = 154/1 = 154 — 10 =144. This application of the formula arrives at the same ten foot depth variant as applying the restriction without using the formula.
 {¶ 32} Either way, the language at issue is clear and unambiguous. A new neighbor cannot build his house with more than a ten foot depth variation from his neighboring residences unless there is more than one neighboring residence and the formula provides for a different figure regarding the minimum depth on the lot. If there is only one neighboring residence because the other neighbor's lot is vacant, the rule and the formula arrive at a ten foot maximum depth differential.
 {¶ 33} The restriction protects existing houses from new neighbors building in front of their houses and impeding their view of the lake. Here, the Martins were left unprotected by their Association and their neighbors who are members of that Association. They had a right to seek enforcement of the Associations' building code. See, e.g., Ormond v. RollingbrookEstates Homeowners Assn. (Dec. 7, 2000), 8th Dist. No. 76482, citing Wallace v. The Clifton Land Co. (1915), 92 Ohio St. 348. The plain language of the restriction established the Martins' claim on the merits. As such, the threshold issue is resolved in the Martins' favor, and their second assignment of error is thus sustained in pertinent part.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 34} We shall next address the Martins first assignment of error, which alleges:
 {¶ 35} "THE TRIAL COURT ERRED IN DENYING THE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION."
 {¶ 36} In seeking a preliminary injunction, the following four factors are relevant: (1) there is a substantial likelihood of success on the merits, (2) the plaintiff will suffer irreparable harm if the injunction is not granted, (3) no third parties will be unjustifiably harmed by an injunction, and (4) the public interest will be served by an injunction. Blakeman'sValley Office Equip., Inc. v. Bierdman, 152 Ohio App.3d 86,2003-Ohio-1074, ¶ 19. See, also, Rock of Ages Memorial, Inc. v.Braido (Feb. 8, 2002), 7th Dist. No. 00BA50. No one factor is dispositive as the court balances the equities involved. Id. at 20-21. The court must be convinced of the injunction's propriety by clear and convincing evidence. Id. The court's judgment granting or denying a motion for a preliminary injunction is said to be reviewed for an abuse of discretion. Id. at ¶ 22.
 {¶ 37} The Martins urge that they presented sufficient evidence of irreparable harm and likelihood of success on the merits for the court to grant a preliminary injunction at the June 9, 2004 hearing. They point out that the court was presented with evidence of the ten foot depth restriction and the fact that it was not applied outright. They note that the court wished to hear more about an alleged agreement between the parties or possible administrative remedies and urge that such concerns were reasons to grant the preliminary injunction rather than merely continue the hearing, especially knowing that the Mizeriks were continuing with their construction.
 {¶ 38} The Association points out that the trial court did not actually deny the motion for a preliminary injunction at the June 9, 2004 hearing. Rather, the court had advised prior to the beginning of the hearing that they would not have enough time to present the entire case that day.
 {¶ 39} Only the building inspector's testimony was presented. Other witnesses were present to testify, but time constraints prevented their testimony on that day. Even if the Martins established a likelihood of success on the merits by presenting the building code and the fact of the improper application, theMartins did not purport to have completely presented their case.And, the defense had no opportunity to present its case at thathearing. See, e.g., City of Cleveland v. K.O. Drugs BoxingAcad. (Nov. 19, 1998), 8th Dist. No. 74681; Sea Lakes, Inc. v.Sea Lakes Camping, Inc. (1992), 78 Ohio App.3d 472, 476 (11th Dist.); Security First Group, Inc. v. Smith (Feb. 13, 1990), 10th Dist. No. 89AP-176 (all holding that an evidentiary hearing with notice to the defendant is required). Because the defense is entitled to be heard on the matter of the preliminary injunction, the court did not err in refusing to grant a preliminary injunction at that time. Any arguments referring to the time involved in finally having the hearing to the request are addressed below. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 40} The Martins' second assignment of error contends:
 {¶ 41} "THE TRIAL COURT ERRED IN REFUSING TO GRANT A PERMANENT INJUNCTION."
 {¶ 42} The Martins argue that the court should not have relied on the fact that construction was complete in order to deny injunctive relief forcing a relocation of the residence. The Martins also suggest that if the court would have granted their request for a preliminary injunction, then the court could not have relied on the fact that construction is complete to deny their request for a permanent injunction. It seems they are combining some arguments from the first assignment of error with some timeliness arguments to counter the court's reliance on the absence of a preliminary injunction. We already addressed why the preliminary injunction could not have been granted at the June 9, 2004 hearing. Thus, we are left with the Martins' apparent complaint that they should not be held accountable for the delay in bringing the case to hearing.
 {¶ 43} First, we note that no objection was made to the court's continuation of the preliminary injunction hearing or to consolidation of that hearing with the hearing on the permanent injunction, which the court accelerated. The court scheduled that consolidated and accelerated hearing to take place within the week. Yet, the Martins' request for class action status impeded the ability to hold the hearing as scheduled.
 {¶ 44} Then, the case had to be continued due to discovery that the Martins' children were joint owners, who were not disclosed in the complaint. Thereafter, the Martins amended their complaint to add their children.
 {¶ 45} Additionally, when the Association sought continuances, the Martins did not object. In fact, the Association's September 23, 2004 motion for a continuance states that the Martins consented to continue the scheduled trial. Finally, the Martins did not insist on an earlier trial date or continued acceleration after their amended complaint was filed.
 {¶ 46} Under the facts and circumstances existing herein, the failure to hold a timely hearing (at a time before construction was at a level where the court would determine there was no turning back) shall not be attributed to the court.
 {¶ 47} Still, the Martins urge that a party should not be able to avoid injunctive relief by continuing to construct in the face of a pending injunction action. The Martins ask that an injunction issue requiring the Mizeriks to demolish and relocate their house and blame the extremity of the result on the Associations' and the Mizeriks' own disregard for the lawsuit.
 {¶ 48} A permanent injunction is an equitable remedy granted only where there is irreparable injury and no adequate remedy at law such as monetary damages. See, e.g., Mid-America Tire, Inc.v. PTZ Trading Ltd., 95 Ohio St.3d 367, 2002-Ohio-2427, ¶ 75
(noting the traditional rules of equity for issuing an injunction). The party seeking the injunction must prove entitlement to that relief by clear and convincing evidence.Collins v. Moran, 7th Dist. No. 02CA218, 2004-Ohio-1381, ¶ 18.
 {¶ 49} It has been stated that the purpose of an injunction is to avoid a future injury rather than fix a past wrong. See id. See, also, State ex rel. Great Lakes College, Inc. v. Ohio St.Med. Bd. (1972), 29 Ohio St.2d 198, 201. Still, a mandatory injunction can be issued, for instance, to order removal of an encroachment from neighboring property. See Busch v. Vosler
(May 27, 1997), 12th Dist. No. CA96-091-4.
 {¶ 50} In determining whether to grant an injunction, the court utilizes a balancing process to weigh the equities involved. Franklin Cty. Dist. Bd. of Health v. Paxton,152 Ohio App.3d 193, 2003-Ohio-1331, ¶ 25. In weighing these equities, courts have refused to order destruction of costly structures as a matter of economic waste, especially where the owner relied upon the assurances of building officials that the structure complied with all relevant codes. Miller v. W. Carrollton
(1993), 91 Ohio App.3d 291 (where the appellate court devised a more rational solution than destruction of a car wash built in violation of codes), citing various cases from other states dealing with requests to have structures torn down.
 {¶ 51} The appellate court should not disturb the trial court's decision on such a matter absent an abuse of discretion.Garono v. State (1988), 37 Ohio St.3d 171 (also noting that such an injunction is an extraordinary remedy). The decision to grant injunction relief in each case revolves around the particular facts and circumstances and the court's view of the reasonableness of a drastic remedy in each situation. As aforementioned, an injunction in general is an extraordinary remedy; a mandatory injunction to remove a constructed residence is even more extraordinary. See, e.g., Spring Valley Investmentsv. Rite Aid of Ohio, Inc. (Apr. 14, 2000), 2d Dist. No. 17982 (reversing an order to destroy a Rite Aid store constructed in violation of a restriction).
 {¶ 52} We first note that actual encroachment upon a neighbor's property is much more violative of property rights than the alleged violation of a depth variant restriction. We then point out that destruction of an essentially completed lake house, which allegedly cost over $300,000 to build, can be labeled economic waste where the harm is a partially obstructed peripheral view of a lake and a lack of privacy, the loss of which could be compensated in monetary damages.
 {¶ 53} As the trial court noted, the Martins did not seek a temporary restraining order and caused or acceded too much of the delay in having their case finally heard. The Martins contend that the Mizeriks' action to continue construction pending the suit should not relieve them from relocation. Yet, the Mizeriks were not barred by any court order and had been issued a "building permit" with multiple assurances that their plans complied with the code. See Miller, 91 Ohio App.3d at 298, citing 32 Tex. L.Rev. 521 (where Professor Van Hecke reviewed forty-two denials of injunctions to remove structures and noted that good faith is often predicated on reliance of advice of counsel or zoning officials). We do note that there were no actual "officials" involved as this is a housing association and we also note that the Mizeriks themselves initially interpreted the formula in the same manner as the Martins. However, an order to destroy their residence was not mandated in this case.
 {¶ 54} In conclusion, the harm incurred by demolition of the home and displacement of its residents is disproportionate to the harm incurred by the existing construction's effect of a diminished view and lack of privacy. The trial court reasonably balanced the equities to find that the offending house may remain. As such, the trial court did not err or abuse its discretion in failing to grant the extraordinary remedy of a mandatory injunction with orders to demolish and relocate a costly residence.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 55} The Martins third and final assignment of error provides:
 {¶ 56} "THE TRIAL COURT ERRED IN DENYING THE PLAINTIFFS AN OPPORTUNITY TO PRESENT EVIDENCE OF DAMAGE TO THE MARKET VALUE OF THEIR HOME."
 {¶ 57} The final hearing was set for a 9:00 a.m. one day bench trial on November 19, 2004. When court opened that morning, the court advised that the Martins would have half the day and the defense would have the other half. (11/19/04 Tr. 4). Opening statements were waived. The Martins first presented the testimony of the Association's building inspector.
 {¶ 58} Relevant to this assignment, the building inspector testified that various photographs represented in Plaintiffs' Exhibit 18 were a fair representation of what the Mizeriks' house looks like from the Martins' house. (11/19/04 Tr. 52-53). Some of these photographs were taken from the Martins' fairly elevated deck. Some show the Martins' hot tub in the corner of their deck with a view of the back of the Mizeriks' house and driveway when looking directly left or even slightly left. The photographs establish that a great portion of the Martins' view of the lake is completely obstructed by the Mizeriks' violative placement of their long L-shaped house which is physically sixty feet deep at its deepest point. The view from the Martins' walkout basement is even worse.
 {¶ 59} Next, the Martins presented the testimony of a surveyor whose company surveyed the Martins' property before the Mizeriks' house was built. The surveyor had also taken measurements in July 2004 to determine the distance between the Martins' and the Mizeriks' houses. He stated that the rear wall of the Mizeriks' house is over fifty feet from the lake front of the Martins' house. (11/19/04 Tr. 86). (It is even a further differential from the front of the Mizeriks' house to the front of the Martins' house; other testimony established that they vary in distance from the high water mark by well over the ten foot restriction.) The surveyor noted that he was also at the Martins' house the day before the hearing. He stated that he stood on the deck and below it at ground level. The surveyor identified the photographs and opined that the Mizeriks' home obstructs the Martins' view stating:
 {¶ 60} "Well, yeah, if you're standing on the deck the first thing you see is the house. You can't see the lake, I mean * * * you can't see the lake if you, you know, if you're looking in that direction you see the house. You don't see the water." (11/19/04 Tr. 88).
 {¶ 61} The Martins' third witness was the Association's former counsel who refuted the defense's claim that the Martins had agreed to the location of the Mizeriks' house. Each of the Martins' witnesses was cross-examined by both the Association's counsel and the Mizeriks' counsel.
 {¶ 62} Just before the Martins called their fourth witness to the stand, the court advised that it was 11:55 a.m., that a one hour lunch would take place at noon, and that the Martins thus only had five minutes remaining to prove their case. The Martins' counsel prayed for more time. Yet, the court refused this request, opining that they should have asked for more than a one day trial when the assignment notice was issued and that the defense had the right to their half day which would end at 4:00 p.m. (11/19/04 Tr. 117-118). Apparently then, the trial court believed that a one day trial cannot last more than six hours.
 {¶ 63} Thus, the Martins attempted to rush through a realtor's testimony in their allotted five minutes. The realtor's testimony established that he has been licensed since 1995. He currently sells between ten and fifteen pieces of property per year at Lake Mohawk. He is also a property owner at the lake. In fact, he served as lake manager in 1995 and 1996, which is the position that oversees the building inspector. (11/19/04 Tr. 119). He was asked to describe the purpose and the enforcement of the ten foot depth restriction during his tenure; however, the court sua sponte found such testimony to be irrelevant. (11/19/04 Tr. 120-121).
 {¶ 64} The realtor then revealed that he was the agent who sold the Mizeriks their lot. He testified that he has viewed the houses belonging to the Martins and Mizeriks from the water and from the road. In fact, he drove by them that morning. (11/19/04 Tr. 121). The following then took place:
 {¶ 65} "Q. In the presence, in your opinion, based on your opinion as a broker and a sales person who makes his living selling these lots in Lake Mohawk, does the presence of the Mizerik home, in your opinion, have a material adverse effect on the Martins?
 {¶ 66} "OBJECTION [by the Mizeriks' counsel]: Objection, your Honor.
 {¶ 67} "THE COURT: Sustained.
 {¶ 68} "Q. Could it have?
 {¶ 69} "OBJECTION [by the Mizeriks' counsel]: Objection, your Honor.
 {¶ 70} "THE COURT: That's even worse. Sustained again. Move on." (11/19/04 Tr. 121-122).
 {¶ 71} After Counsel asked a few more questions about the restriction, the court asked the defense if they had any questions of the realtor. The Mizeriks' attorney presented an exhibit which was an appraisal of the Martin's house from the county auditor's office and tried to have the realtor read the home's appraised value. However, the court sua sponte stated that the question was irrelevant. (11/19/04 Tr. 124). The court then recessed at 12:07 and resumed at 1:10 p.m. The plaintiffs' exhibits were admitted, and the defense successfully moved for the Civ.R. 41(B)(2) dismissal.
 {¶ 72} The court's November 29, 2004 decision stated that the Martins failed to demonstrate a right to relief. The court then released findings of fact and conclusions of law on January 10, 2005. In its findings of fact, the court found that restriction and formula were properly applied and then stated, "There is no evidence in the record to support the Martins' claim that they have sustained monetary damages as a result of the Mizerik home construction." Relevant to this issue, the court stated in its conclusions of law:
 {¶ 73} "Martins failed to present any competent evidence of any alleged monetary loss they claim to have sustained, including any diminution in the market value of their property.
 {¶ 74} "G) Martins failed to meet their burden of proof at trial relative to any of the claims asserted in their Amended Complaint either for injunctive relief or, alternatively, for monetary damages."
 {¶ 75} Under their third assignment of error, the Martins complain that the court would not allow them to inquire about money damages. Specifically, they urge that the realtor should have been permitted to testify on how the value of the Martins' home is affected by the Mizeriks' violation.
 {¶ 76} The Association responds by arguing that a proper foundation was not laid for the realtor's expert opinion. The Association claims that there was no testimony that the realtor experienced the view from the Martins' property or how that view changed. The Association contends that the realtor had no greater knowledge of the view than any passerby and that an expert must have specialized knowledge in order to properly give an expert opinion, citing Evid.R. 702.
 {¶ 77} Evid.R. 702 provides that a witness may testify as an expert if all of the following apply:
 {¶ 78} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 79} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 80} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. [If the testimony reports the result of a procedure, test, or experiment, factors are then recited to ensure the testimony is reliable]."
 {¶ 81} First, Evid.R. 702(A) is satisfied because testimony on diminished market value of a property due to a loss of view and loss of privacy is a matter beyond the knowledge or experience possessed by laypersons. See, e.g., Cincinnati v.Banks (2001), 143 Ohio App.3d 272, 282 (1st Dist.). Second, no one argues that this realtor is not qualified under Evid.R. 702(B) to testify as to market values on various properties on Lake Mohawk. See id. (where the expert had years of experience of downtown realty, he could opine on fair market value). As aforementioned, he has been a licensed realtor for nine years, he sells ten to fifteen parcels on this lake per year, he is a property owner at the lake himself, he sold the parcel in question, and he previously served as the lake manager for over a year.
 {¶ 82} It is basically Evid.R. 702(C) that the Association relies upon. They seem to believe that "specialized information" refers to the intimacy level the realtor developed with the subject of the case. They urge that the information cannot be considered "specialized" if it could be viewed by anyone driving by in a car or boat.
 {¶ 83} However, the rule's use of the phrase "specialized information" refers to the principles and methods employed to arrive at a decision. Here, the testimony was not going to report the result of a procedure, test, or experience. The testimony was intended to be based upon specialized information obtained from the realtor's experience in selling Lake Mohawk properties and houses. See Banks, 143 Ohio App.3d at 282 (explaining that "specialized information" refers to whether the expert has learned a reliable method for determining market values in a certain area).
 {¶ 84} The possible failure to stand on a deck does not mean that the expert does not possess "specialized information" which he can call upon to calculate market values in general. Nor does it constitute deficient methodology. This witness personally observed the Mizeriks' lot when it was vacant because he actually sold it to the Mizeriks. He personally observed both houses from the lake. He also personally observed both residences from the road. In fact, he drove by that morning to refresh his observations.
 {¶ 85} Expert testimony can be based upon evidence introduced at trial or upon personal observation. Evid.R. 703. One can perceive the extremely forward placement of the Mizeriks' house from the road or from the lake and then use one's specialized knowledge of the lake property values with regards to vistas and privacy to calculate an opinion on the effect the Mizeriks' violative construction had on its neighboring residence.
 {¶ 86} Also important to our evaluation of the foundational issue is the fact that there was no jury involved and the fact that the Martins were given a mere five minutes to present this witness's testimony. They first wished to elicit testimony regarding his knowledge of the application of the ten foot depth restriction. The realtor expressed his familiarity with the restriction and its purpose. The realtor noted his personal observations of the relevant properties from various viewpoints. The Martins then tried to elicit his expert opinion on the effect of the Mizeriks' house placement on their house's market value.
 {¶ 87} With the rushed atmosphere and refusal to give any extra time, an extended foundation was impossible. They were not even given time to present their own testimony on the diminished value of their residence. A property owner is permitted to testify as to the value of their own property without being qualified as an expert. Tokles Son, Inc. v. Midwestern Indem.Co. (1992), 65 Ohio St.3d 621, 625. Further, the Martins had subpoenaed two other witnesses including the current lake manager, but they were precluded from questioning them due to the three hour time limit placed on their case in chief.
 {¶ 88} Moreover, the objection, which was presented by the Mizeriks' attorney, was not specific. And, the court's response was unenlightening. The Association, who is the only party that responds to the Martins' appellate complaint on this issue, did not participate in the objection at trial. The grounds of the objection and the reason for the court's sustaining of the objection are unknown. The party objecting should state the reason with particularity unless the grounds are apparent from the record. Evid.R. 103(A)(1) (punishing the objector if he later appeals).
 {¶ 89} In considering the court's statements throughout, it seems as if the court thought the testimony was irrelevant or speculative because the court believed that the formula was properly applied. Yet, the restriction and formula had not been properly applied by the Association and the Mizeriks, and the court erred in upholding their application. Thus, the realtor's testimony was relevant to the issue of damages. As aforementioned, the only argument set forth by an appellee regarding this issue on appeal revolves around Evid.R. 702; however, that rule was sufficiently satisfied.
 {¶ 90} Accordingly, this assignment of error has merit. The Martins were rushed to present their expert testimony concerning money damages. Even so, the foundation presented was sufficient, especially under the circumstances. The realtor's testimony was relevant to the issue of damages. Thus, the realtor should have been permitted to render his expert opinion. A substantial right of the Martins' was affected by the rushed finale and the exclusion of their only chance to present evidence of damages.
 {¶ 91} Moreover, this court is already reversing on the merits of the Martins' claim and holding that the plain language of the restriction was in fact violated. Now that we have explained the proper application of the restriction and the formula, it is clear that the Martins' suffered some damages for loss of privacy and partial loss of a lake view with a substituted view of the back of a house and a driveway. The question remains as to the amount of their damages. They should not have been precluded by objection and time from presenting their evidence on this topic.
 {¶ 92} For the foregoing reasons, the judgment of the trial court is hereby affirmed in part, reversed in part and this cause is remanded for a new hearing solely on the issue of the amount of damages that are appropriate.
Donofrio, P.J., concurs.
Waite, J., concurs.