[Cite as *RR Food Mart, Inc. v. Davis*, 2020-Ohio-1267.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RR FOOD MART, INC. | JUDGES:<br>Hon. William B. Hoffman, P.J |
| Plaintiff-Appellee and<br>Cross-Appellant | Hon. W. Scott Gwin, J.<br>Hon. Earle E. Wise, J. |
| -vs- | Case No. 2019CA00124 |
| MARK DAVIS, et al. | |
| Defendant-Appellants and<br>Cross-Appellees | O P I N IO N |


CHARACTER OF PROCEEDINGS:      Appeal from the Canton Municipal Court,
                               Case No. 2019CVF2135


JUDGMENT:                      Affirmed

DATE OF JUDGMENT ENTRY:        March 30, 2020


APPEARANCES:


For Plaintiff-Appellee/Cross-Appellant

E.K. WRIGHT
134 Fourth Street, SW
P.O. Box 711
New Philadelphia, Ohio  44663

For Defendants-Appellants/Cross-Appellees

BRENT A. BARNES
Geiger Teeple Robinson & McElwee, PLLC
1844 West State Street, Suite A
Alliance, Ohio  44601

*Hoffman, P.J.*

**{¶1}** Defendants-appellants/cross-appellees Mark Davis, et al. appeal the July 8, 2019 Judgment Entry entered by the Canton Municipal Court, which granted judgment in favor of plaintiff-appellee/cross-appellant RR Food Mart, Inc. ("RR Food Mart")

STATEMENT OF THE FACTS AND CASE

**{¶2}** RR Food Mart, an Ohio Corporation, owned a gas station/retail convenience store located at 13066 Cleveland Avenue, Uniontown, Stark County, Ohio ("the Business"). Rajinder K. Bhau was its principal. Appellant Mark Davis is the president of Appellant Zoom Green, LLC ("Zoom Green"), an Ohio limited liability company. Davis was interested in purchasing a business and found an on-line listing for the Business while researching possibilities. Davis contacted the business broker who put him in touch with Bhau. Thereafter, RR Food Mart and Zoom Green entered into negotiations and Zoom Green ultimately purchased the Business.

**{¶3}** On April 10, 2019, RR Food Mart filed a Complaint in the Canton Municipal Court, seeking $15,000, the unpaid portion of the purchase price of the Business, plus 10% interest as well as collection and attorney fees. Zoom Green filed an Answer and Counterclaim on May 10, 2019. The Counterclaim sought $3,853.66, which represented cigarette rebate amounts allegedly due to Zoom Green pursuant to the Purchase Agreement ("the Agreement").

**{¶4}** The matter proceeded to trial before the court on June 24, 2019. The following evidence was presented at trial.

**{¶5}** On February 13, 2018, the parties executed the Agreement. Davis prepared the Agreement by modifying a previous purchase agreement provided to him by the business broker. Bhau signed the Agreement on behalf of RR Food Mart as well as

individually; Davis signed the Agreement on behalf of Zoom Green as well as individually. The agreed upon purchase price was $155,000.00 plus the wholesale value of the inventory as of the date of closing. RR Food Mart received $150,000.00 at closing. Pursuant to the terms of the Agreement, Zoom Green and Davis executed a Promissory Note ("the Note") in the amount of $50,000.00, which reflected the $5,000.00 remaining balance owed on the purchase price, plus $45,000.00, the initial estimate of the wholesale value of the inventory.

{¶6} On the evening of February 13, 2018, the parties met at the Business. Bhau testified he and Davis conducted an inventory at that time. Bhau stated the wholesale inventory value was over $45,000.00, but both parties agreed to $45,000.00 as the wholesale value as that figure was provided for in the Note. Davis disagreed, explaining the meeting on the evening of February 13, 2018, was a walk through and "there was no way to come up with a value of inventory from that." Tr. at 59. Davis maintained he never agreed to $45,000.00 as the wholesale value of the inventory.

{¶7} Prior to February 13, 2018, Davis arranged for Angie's Inventory Service to conduct an inventory on the Business. The inventory was conducted by Angela Shoup on February 14, 2018. Shoup determined the retail value of the inventory to be $42,417.37, and, using industry standards, calculated the wholesale value of the inventory at $35,273.58. Shoup testified Davis was present while she conducted the inventory, Shoup noted Bhau "was there at some point in time, but I don't know if it was in the beginning, the end. I know I seen him that day though." Tr. at 16. Bhau stated he arrived at the Business towards the end of the inventory. Davis stated Bhau received a

copy of Shoup's inventory. Bhau claimed he was not advised in advance of the inventory and never agreed to any modification of the terms of the Agreement.

{¶8} Using Shoup's retail value of the inventory, Davis applied the percentage reduction formula set forth in the Agreement and calculated the wholesale value of the inventory as $31,967.28. Zoom Green made five amortized payments on the Note, totaling $36,146.34, which represented the $5,000.00 remaining balance on the purchase price plus the $31,967.28 for the inventory.

{¶9} The trial court took the matter under advisement. Via Judgment Entry filed July 8, 2019, the trial court granted judgment in favor of RR Food Mart in the amount of $13,853.66 plus interest. The trial court dismissed Davis and Zoom Green's counterclaim in its entirety and ordered Appellants to pay all court costs.

{¶10} It is from this judgment entry Appellants appeal, raising the following assignments of error:


I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY ITS INTERPRETATION OF THE PURCHASE AGREEMENT THAT IS CONTRARY TO EXPRESS WRITTEN TERMS OF THE PARTIES [SIC] AGREEMENT.

II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANTS-APPELLANTS AS THE PREPONDERANCE OF THE EVIDENCE DEMONSTRATED THAT THE WHOLESALE VALUE OF THE INVENTORY WAS $31,967.28 AND DEFENDANTS-APPELLANTS WERE

ENTITLED TO AN ADJUSTMENT ON THE PROMISSORY NOTE AND A FINDING THAT IT WAS PAID IN FULL.

**{¶11}** RR Food Mart cross-appeals, assigning as error:

THE TRIAL COURT ERRED BY ITS FAILURE TO GRANT JUDGMENT AGAINST DEFENDANT MARK DAVIS INDIVIDUALLY AS A PERSONAL GUARANTOR OF THE WARRANTIES AND AGREEMENT OF BUYER CONTAINED IN THE CONTRACT OF THE PARTIES.

### I, II

**{¶12}** For ease of discussion, we shall address Davis and Zoom Green's two assignments of error together. In the first assignment of error, Appellants contend the trial court erred as it interpreted the Agreement in a manner contrary to the Agreement's express written terms. In the second assignment of error, Appellants argue the trial court erred in failing to find (1) the wholesale value of the inventory to be $31,967.28, (2) Appellants were entitled to an adjustment on the Note, and (3) the Note was paid in full.

**{¶13}** In the case of contracts and other written instruments, the construction of the writing is a matter of law which we review de novo. See, *Martin v. Lake Mohawk Property Owner's Ass'n.*, 5th Dist. No. 04 CA 815, 2005-Ohio-7062, ¶ 23, citing *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576, 697 N.E.2d 208 (1998). "A court must interpret a contract so the intent of the parties may be ascertained and given effect." *Natl. City Bank v. Concorde Controls, Inc.*, 11th Dist. Lake No. 2001-L-113, 2002-Ohio-6578,

¶24 (citation omitted). "When a court is construing the meaning of a contract, the intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Id.*

{¶14} Section 2 of the Agreement, "Purchase Price", provides:

The price to be paid by Buyer to Seller for the Business Assets described herein shall be One Hundred Fifty-Five Thousand and 00/100 Dollars ($155,000.00) (hereinafter referred to as the "Purchase Price") plus the wholesale value of the inventory as of date of closing, as determined in accordance with Section 2(b) below.

\* \*

The parties shall cooperate in the orderly determination of the inventory value ("Inventory Valuation") on, before, or within 24 hours of the Initial Transaction Closing[1] using purchase records and price lists in Seller's possession. Buyer shall have the right, at its reasonable discretion, to refuse to purchase any inventory that Buyer deems undesirable or unsellable, and nothing herein shall obligate Buyer to purchase any such inventory. The Inventory Valuation shall be based on the following criteria:

(i) Cigarettes will be valued based on their wholesale cost plus rebates;

---

[1] The Initial Transaction Closing was the first step in the Transaction Closing "at which time the parties shall execute the Purchase Agreement and the aforementioned Management Agreement, make all required and [sic] payments at which time the Buyer will take over operation of the Business Assets and Seller shall deliver to Buyer a Warranty Bill of Sale." Section 3 of the Agreement, "Transaction Closing".

(ii) All other items at actual wholesale cost. *Item costs deemed too burdensome to determine* shall be calculated via the following: Beer at retail less 25%, Wine retail less 40%, Soda, Chips, and other sellable merchandise will be valued at their retail sales price less 50%. (Emphasis added).

**{¶15}** Section 4 of the Agreement, "Purchase Price Payment", reads:

Upon acceptance of this purchase contract by both parties, Buyer would have deposited the sum of $25,000.00 with Sellers agent, Realty Commerce Group. Said deposit shall be applied to the Purchase Price at the Initial Transaction Closing, and in the event the transaction does not close, for any reason other than a breach of this Agreement on the part of Buyer, said earnest money deposit shall be refunded to Buyer.

At the Initial Transaction Closing between Buyer and Seller, on or before the 14th day of February, 2018, the Buyer shall pay Seller the amount of One Hundred Twenty-Five Thousand and 00/100 Dollars ($125,000.00).

Buyer to execute and deliver to Seller a promissory note for the remaining Five Thousand and 00/100 Dollars ($5,000.00) of the purchase price plus the amount of the wholesale value of the inventory (initially estimated at $45,000.00) amortized for 5 months, with first payment due on the 15th day of April, 2018.

**{¶16}** The evidence presented at trial established Bhau and Davis met at the Business on the evening of February 13, 2018, after the Agreement and the Note had been executed. Bhau stated he and Davis conducted an inventory at that time. Davis disagreed, explaining the meeting was merely a walk through and "there was no way to come up with a value of inventory from that." Tr. at 59. Bhau indicated the wholesale inventory value was over $45,000.00, but the parties agreed to $45,000.00 as the wholesale value as that figure was provided for in the Note. Davis maintained he never agreed to $45,000.00 as the wholesale value of the inventory. Davis arranged for Angie's Inventory Service to conduct an independent inventory on February 14, 2018. Davis asserted he and Bhau met Shoup at the Business on February 14, 2018. Bhau testified he was not advised of the inventory and only became aware of such when he arrived at the Business later in the day to discuss the lottery with Davis and saw Angela Shoup.

**{¶17}** In its July 8, 2019 Judgment Entry, the trial court stated it had "not been convinced by a preponderance of the evidence that the parties agreed to any modification of the terms of the written purchase agreement and the written promissory note." July 8, 2019 Judgment Entry at 2-3. After reviewing the entire record in this matter including reading the complete transcript, we agree. Neither the Agreement nor the Note contemplated a change in the $45,000.00 wholesale value of the inventory or for subsequent inventories to be conducted.

**{¶18}** The Agreement provides, "[t]he parties shall cooperate in the orderly determination of the inventory value . . . using purchase records and price lists in Seller's possession." We find Davis's decision to conduct an independent inventory, while not expressly prohibited by the Agreement, was also not required by it. Bhau was not even

notified of the Shoup inventory. There was not cooperation. Only in the event of a disagreement over the valuation did the issue of alternative calculation of inventory become necessary. The trial court implicitly accepted Bhau's testimony the parties agreed to a $45,000.00 valuation the evening of February 13, 2018, when it stated it had not been convinced by a preponderance of the evidence the parties agreed to any modification of that amount as set forth in the Agreement and written promissory note.

{¶19} Based upon the foregoing, we find the trial court did not err in interpreting the Agreement or finding the evidence failed to demonstrate the wholesale inventory value was $45,000.00.

{¶20} Appellants' first and second assignments of error are overruled.

CROSS-APPEAL

I.

{¶21} During oral arguments in this matter, RR Food Mart recognized the trial court had, in fact, granted judgment against Zoom Green and Davis, individually and orally agreed to withdraw the cross-appeal. As such, we find Appellees' sole assignment of error on cross-appeal is moot.

{¶22}  The judgment of the Canton Municipal Court is affirmed.


By: Hoffman, P.J.

Gwin, J.  and

Wise, Earle, J. concur