OPINION
{¶ 1} Rupinderpaul Singh Sumra ("Rupinderpaul") appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which found that several items of jewelry belonged to his wife, Beant Kaur Sumra ("Beant"), and ordered him to return those items or their cash value to her.
 {¶ 2} This case is before us following our remand from Rupinderpaul's prior appeal. In his first appeal, Rupinderpaul challenged the trial court's order holding him in contempt for failing to pay $1,500 of his wife's attorney fees within sixty days of the filing of the final decree and judgment of divorce and for failing to return her jewelry to her.Sumra v. Sumra, Montgomery App. No. 19727, 2003-Ohio-4330. We affirmed the finding of contempt with regard to the attorney fees, and we held that the trial court had jurisdiction to order Rupinderpaul to return his wife's jewelry to her. We remanded to the trial court for an evidentiary hearing to determine what jewelry belonged to his wife.
 {¶ 3} On March 2, 2004, the trial court held an evidentiary hearing regarding the ownership of two necklaces, two pairs of earrings, four bracelets and two forehead pieces, all of which Beant claimed to be hers. Rupinderpaul asserted that these items belonged to his mother. After hearing testimony from Beant, Rupinderpaul, Rupinderpaul's parents, and Rupinderpaul's uncle, the trial court found that the disputed jewelry was Beant's separate property and that it had not been loaned by Rupinderpaul's mother to Beant. The court ordered Rupinderpaul to return the jewelry to Beant within seven days or, if the jewelry were not returned, to deliver the value of same, which it found to be $5,000, within fourteen days.
 {¶ 4} Rupinderpaul raises two assignments of error on appeal.
 {¶ 5} "I. THE TRIAL COURT ERRED BY FINDING THAT PLAINTIFFA-PPELLANT HAD POSSESSION OF JEWELRY BELONGING TO THE DEFENDANTA-PPELLEE WHERE THE MANIFEST WEIGHT OF THE EVIDENCE BEFORE THE COURT COULD ONLY LEAD TO THE CONCLUSION THAT PLAINTIFF-APPELLANT DID NOT HAVE POSSESSION OF ANY JEWELRY BELONGING TO DEFENDANTA-PPELLEE AND THAT THE DISPUTED JEWELRY ACTUALLY IS THE PROPERTY OF PLAINTIFF-APPELLANT'S MOTHER."
 {¶ 6} In his first assignment of error, Rupinderpaul asserts that the manifest weight of the evidence demonstrated that the jewelry at issue belonged to his mother. He also claims that Beant had failed to produce evidence — other than her self-serving testimony — of her ownership interest in the jewelry or of its value.
 {¶ 7} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C.E. Morris Co. v. Foley Const. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus; see Lykins v. Miami Valley Hosp., Montgomery App. No. 19784, 2004-Ohio-2732, ¶ 112. "Furthermore, we must presume the findings of the trier of fact are correct because the trier of fact is best able to observe the witnesses and use those observations in weighing the credibility of the testimony." Lykins, supra, citing Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273.
 {¶ 8} According to the evidence presented at the evidentiary hearing, Rupinderpaul and Beant were married in India as part of an arranged marriage on June 28, 1998. Beant testified that she received certain items of jewelry as wedding presents from her family: a pair of earrings, a necklace and a forehead piece from her parents; four bracelets from her aunt and uncle; and a necklace, a forehead piece and a pair of earrings from her brother and sister. Beant and Rupinderpaul indicated that she wore some of this jewelry at their wedding. Beant testified that the jewelry was worth approximately $5,000, based on her experience purchasing other pieces of jewelry. Rupinderpaul's mother, Pritam K. Kaur Sumra ("Pritam"), testified that she believed that the jewelry that Beant wore at her wedding in India had been rented by Beant's parents and were fake.
 {¶ 9} While still in India, Beant and Rupinderpaul attended the wedding of Beant's cousin. Pritam testified that she had loaned jewelry to Beant to wear at this ceremony, and that Beant had returned the jewelry following the wedding. Beant denied that Pritam had loaned her jewelry.
 {¶ 10} Rupinderpaul and his parents returned to the United States in August 1998 while Beant remained in India. On February 14, 1999, Beant came to the United States. Beant indicated that she brought her jewelry and other personal items with her. Beant and Rupinderpaul resided with Rupinderpaul's parents. On February 26, 1999, Beant and Rupinderpaul had a civil wedding ceremony at the Montgomery County Courthouse in Dayton. Beant indicated that she wore the jewelry that had been given to her by her parents and siblings at this ceremony. Pritam testified that she again loaned jewelry to Beant to wear at the civil wedding, and that Beant had returned the jewelry.
 {¶ 11} In May 1999, Beant traveled to Arizona, where her uncle resided. Pritam testified that she loaned jewelry to Beant to take with her; Beant again denied having been loaned any jewelry. Beant returned to Dayton in the fall of 1999. When she returned, Rupinderpaul's father demanded that she give him all of her jewelry, and Beant complied. Rupinderpaul's mother, father and uncle testified that Beant was returning the jewelry that had been loaned to her by Pritam.
 {¶ 12} Three days later, Rupinderpaul's parents drove Beant to the Greyhound bus station in Dayton and purchased her a ticket to Cincinnati. Beant testified that Rupinderpaul's parents had locked her in a room for the three days between her return from Arizona and being taken to the bus station. Beant testified that she called the police from the bus station and went to a women's shelter. Beant further indicated that she did not return to Rupinderpaul's parents' home, and that her jewelry and other personal items remained in their house. In contrast, Rupinderpaul's parents testified that Beant went to live with a boyfriend in the Cincinnati area. Rupinderpaul's parents testified that she returned a week or so later with the police and retrieved her belongings; Beant allegedly did not request jewelry at that time.
 {¶ 13} In support of her assertion that she owned the two necklaces, two pairs of earrings, four bracelets and two forehead pieces at issue, Beant presented several photographs of herself wearing several of the disputed pieces of jewelry. Exhibits B and C showed Rupinderpaul and Beant at their civil marriage in Dayton. Exhibits D and E were taken in India. Exhibits F and G were taken at Rupinderpaul's parents' home after the civil ceremony. Finally, Exhibits H and I were taken at Rupinderpaul's parents' home on Feb. 14, 1999, after Beant's arrival. Beant did not present photographs showing the earrings and forehead piece from her siblings or the bracelets from her aunt and uncle.
 {¶ 14} After reviewing the photographs, Beant testified that Exhibit E showed the jewelry that was given to her by family for her wedding. Specifically, the photograph displayed the forehead piece, the short necklace and the earrings given by her parents as well as the long necklace given by her siblings. Beant indicated that she wore the same earrings and necklaces at her civil wedding, as shown in Exhibit C. Supporting Beant's testimony, Rupinderpaul testified that Exhibits D and E were taken in India on the day of their marriage. He testified that he had never seen his mother in possession of the jewelry that was shown in Exhibit E. Upon review of Exhibit C, Rupinderpaul indicated that his mother had indicated that she had loaned the jewelry to Beant. However, Rupinderpaul acknowledged that he was not present when his mother allegedly loaned the jewelry to Beant nor when Beant put on the jewelry. Although Pritam disputed that Beant owned the jewelry that she had worn at her wedding in India, Pritam admitted that she did not loan jewelry to Beant for that ceremony.
 {¶ 15} In our judgment, the above testimony and evidence was sufficient for the trial court to conclude that the disputed jewelry belonged to Beant. The evidence established that Beant's family had given her jewelry for her wedding in India, and the court could have reasonably concluded upon reviewing all of the exhibits that Beant wore this same jewelry at her wedding in Dayton. Although Pritam testified that she owned the jewelry that Beant wore for the Dayton wedding (as shown in Exhibits B and C), the court could have reasonably concluded that the jewelry shown in the photographs of the Dayton wedding and of the reception following the wedding were the same as shown in the photograph of the wedding in India. Moreover, despite Pritam's testimony that Exhibit E was taken at Beant's cousin's wedding, the court was free to believe the testimony of Rupinderpaul that the photograph was taken at his and Beant's wedding — particularly in light of the fact that Pritam appeared somewhat confused when she was identifying the photographs. Finally, the fact that Rupinderpaul's parents and uncle testified that the jewelry that Beant gave to Rupinderpaul's father belonged to Pritam and presented receipts for jewelry does not require a finding in Rupinderpaul's favor. The trial court had discretion to find Pritam's testimony not to be credible and to discount the receipts as related to other jewelry. Given that the resolution of this dispute turned entirely on the trial court's assessment of the witnesses' credibility, we will not disturb its finding on appeal.
 {¶ 16} Rupinderpaul also challenges the trial court's determination that the value of Beant's jewelry was $5,000. In Smith v. Padgett
(1987), 32 Ohio St.3d 344, 513 N.E.2d 737, the Supreme Court of Ohio stated that "Ohio law has long since recognized that an owner of either real or personal property is, by virtue of such ownership, competent to testify as to the market value of the property." Id. at 347; Jones v.Dayton Power Light Co. (Dec. 14, 1994), Greene App. No. 94-CA-49; see also Valigore v. Cuyahoga Cty. Bd. of Revision, 105 Ohio St.3d 302,2005-Ohio-1733, 825 N.E.2d 604, ¶ 5. The weight to be given to such testimony is a matter to be determined by the trier of fact. Smith,32 Ohio St.3d at 348.
 {¶ 17} In the present case, Beant testified that the total value of the disputed jewelry was approximately $5,000. She stated that she knew the price of gold and that she determined the value of the disputed jewelry based on her purchases of other pieces of jewelry. As the owner of the jewelry, Beant presented competent evidence of the jewelry's value, and the trial court was free to credit that testimony in determining that the jewelry was worth $5,000.
 {¶ 18} The first assignment of error is overruled.
 {¶ 19} "II. THE TRIAL COURT ERRED BY ABUSING ITS DISCRETION WHEN IT FOUND PLAINTIFF-APPELLANT HAD POSSESSION OF JEWELRY BELONGING TO DEFENDANT-APPELLEE AND ISSUED AN ORDER REQUIRING PLAINTIFFA-PPELLANT TO EITHER TURN OVER THE DISPUTED JEWELRY TO OR PAY DEFENDANT-APPELLEE AN ALLEGED VALUE OF THE DISPUTED JEWELRY."
 {¶ 20} In his second assignment of error, Rupinderpaul asserts that the trial court erred in ordering him to return the jewelry to Beant, because he has never had possession of the jewelry. Rupinderpaul argues that Beant should have filed a claim against his parents, who have possession of the jewelry.
 {¶ 21} Initially, we agree with Beant that Rupinderpaul should have raised this issue in his original appeal of the trial court's order to return Beant's jewelry to her. Regardless, we find no fault with the trial court's order. Rupinderpaul has acknowledged that he and Rupinderpaul resided with his parents during their marriage and that he continues to do so. In light of his close relationship with his parents and the fact that the jewelry is located at their common residence, we believe the trial court could properly order Rupinderpaul to obtain the jewelry and return it to his wife.
 {¶ 22} The second assignment of error is overruled.
 {¶ 23} The judgment of the trial court will be affirmed.
Grady, J. and Donovan, J., concur.