DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment in favor of Dewayne and Robin Loop, plaintiffs below and appellees herein, on their claims against Timothy Hall, Paul Hall and Hall's Excavation Corporation,[2] defendants below and appellants herein.
 {¶ 2} Appellants assign the following errors for review and determination:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT'S DECISION FINDING THE EXISTENCE OF THE CONTRACT AS ALLEGED BY APPELLEES AND A SUBSEQUENT BREACH OF THIS CONTRACT BY APPELLANTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
SECOND ASSIGNMENT OF ERROR:
ASSUMING THE EXISTENCE OF THE CONTRACT AS ALLEGED BY APPELLEE[S] AND ITS BREACH BY APPELLANTS, THE TRIAL COURT'S DECISION GRANTING JUDGMENT IN FAVOR OF APPELLEES IN AN AMOUNT EQUAL TO THE VALUE OF THE EQUIPMENT, RATHER THAN THE VALUE OF A ONE-THIRD INTEREST IN THE CORPORATION OR, IN THE ALTERNATIVE, NOMINAL DAMAGES WAS CONTRARY TO LAW AND CONSTITUTED AN ABUSE OF DISCRETION."
THIRD ASSIGNMENT OF ERROR:
"THE TRIAL COURT'S ASSESSMENT OF THE VALUE OF THE EQUIPMENT AND THE AMOUNT OF THE LIENS ON THE EQUIPMENT THAT WAS PAID FOR BY APPELLANTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONSTITUTED AN ABUSE OF DISCRETION."
FOURTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT'S DECISION GRANTING JUDGMENT AGAINST APPELLANTS TIMOTHY HALL AND PAUL HALL INDIVIDUALLY WAS CONTRARY TO LAW AND AGAINST THE MANIFEST OF THE EVIDENCE."
FIFTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT'S DECISION NOT TO INCLUDE THE REMAINING SHAREHOLDERS IN HALL'S EXCAVATION CORP. AS PARTIES IN THIS CASE WAS CONTRARY TO LAW AND CONSTITUTED AN ABUSE OF DISCRETION."
SIXTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT'S JUDGMENT IN FAVOR OF APPELLEE ROBBIN LOOP WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 3} Dewayne Loop operated earth moving equipment for twenty-five years.[3] Loop started his own business in 1994 and in late 1998 or early 1999, Loop contacted Timothy Hall about associating with the Hall family business (Hall's Excavation Corporation).[4] Although it is undisputed that Loop began working with the Halls in 1999, and continued working with them until 2001, the precise nature of that relationship is disputed.
 {¶ 4} Loop claims that he bought into the Hall family business by trading $372,000 worth of equipment for a one-third share of the company. The Halls, however, claim that Loop was simply an employee and that they acquired Loop's business assets (equipment) in exchange for paying off the liens on those assets.
 {¶ 5} Dewayne and Robin Loop commenced the instant action and alleged that the Halls and Hall's Excavation Corporation (1) breached an oral contract to sell them part of the company; and (2) defrauded them into transferring their assets to Hall Excavation Corporation. They requested $500,000 in compensatory damages. Appellants denied the existence of an agreement to sell part of the company and counterclaimed that the Loops owe them $3,618 for "clay soil" that the company delivered to the Loop residence.
 {¶ 6} At the bench trial, Loop recounted the terms of the oral contract to buy one-third of the company, as well as the value of equipment he traded for that ownership interest.[5] Also, six Hall's Excavation Corporation employees, including family member Jason Hall,[6] testified that Timothy or Paul Hall represented to them that Dewayne Loop was a partial owner or third partner in the business. Loop explained that when business got "pretty slim" in October 2001, he suggested that he and the company part ways and that he take some of the equipment back and work for himself. According to Loop, appellants would only let him have the equipment if he agreed to purchase it for $125,000.
 {¶ 7} Timothy and Paul Hall both testified that Loop was not an owner in the business and that they did not intend to sell him part of the business. Timothy Hall testified that they hired Loop as an employee and agreed to acquire his assets and to pay off his debt to help extricate him from financial problems. Timothy Hall further testified that the equipment is nowhere near as valuable as Loop represented and that they agreed to take it off his hands for the amount of the debt that he owed.
 {¶ 8} The trial court (1) determined that an oral agreement existed between Loop and the Halls to acquire one third of Hall's Excavation Corporation; (2) determined that the Halls breached that contract and; (3) awarded appellees $289,382 in damages.[7] Subsequently, appellants filed a Civ.R. 59 motion for new trial, and the trial court overruled their motion. This appeal followed.
 I {¶ 9} We jointly consider appellants' first, third, fourth and sixth assignments of error as they all assert that various parts of the trial court's judgment are against the manifest weight of the evidence.
 {¶ 10} We begin with the well settled proposition that judgments supported by some competent and credible evidence should not be reversed on appeal as being against the manifest weight of the evidence. Shemo v. Mayfield Hts. (2000),88 Ohio St.3d 7, 10, 722 N.E.2d 1018; C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus. This standard of review is highly deferential and even "some" evidence is sufficient to sustain the judgment and to prevent a reversal. See Barkley v. Barkley (1997),119 Ohio App.3d 155, 159, 694 N.E.2d 989; Simms v. Heskett (Sep. 18, 2000), Athens App. No. 00CA20.
 {¶ 11} Generally, triers of fact resolve questions concerning the weight of the evidence and witness credibility. Cole v.Complete Auto Transit, Inc. (1997), 119 Ohio App.3d 771,777-778, 696 N.E.2d 289; Jacobs v. Jacobs, Scioto App. No. 02CA2846, 2003-Ohio-3466 at ¶ 31. The underlying rationale for deferring to the trier of fact on these issues is that the trier of fact is best positioned to view witnesses, to observe witness demeanor, gestures and voice inflections, and to use those observations to weigh witness credibility. See Myers v. Garson
(1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742; Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Thus, a trier of fact may believe all, part or none of the testimony of any witness who appears before it. Rogers v. Hill
(1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438; Stewart v.B.F. Goodrich Co. (1993), 89 Ohio App.3d 35, 42, 623 N.E.2d 591.
 {¶ 12} Appellants' first argument is that the trial court's finding concerning the existence of the contract to sell Loop one-third of Hall's Excavation Corporation is against the manifest weight of the evidence. Loop testified concerning the oral agreement with Timothy Hall. Appellants counter that Loop's testimony is "neither credible nor competent" and that the trial court should have, instead, accepted their evidence. We disagree with appellants. The trial court, as the trier of fact, apparently determined that Loop's account is more credible. This is well within a trier of fact's province. Indeed, the September 12, 2005 judgment entry explicitly cites "credibility of the witnesses" as a basis for the trial court's determination.
 {¶ 13} Appellant's next asserts that the trial court's assessment of the value of the equipment, and computation of damages, is against the manifest weight of the evidence. In particular, appellants argue that Loop gave no basis for his opinion concerning the property's value and provided no documentary evidence to support his opinion. We find no merit in this argument.
 {¶ 14} First, Loop testified that during his negotiations with Timothy Hall "they accepted the value of the equipment . . . for what we had estimated it at." (Emphasis added.) In other words, some evidence in the record supports the conclusion that the Halls agreed to this valuation. We recognize, of course, that the testimony and evidence was contradicted. Once again, however, this is a credibility issue that the trial court, acting as the trier of fact, must determine. Second, the uncontroverted evidence reveals that Loop owned the transferred assets. Generally, owners of personal property may testify as to the value of their property. See Sumra v. Sumra, Montgomery App. No. 20605, 2005-Ohio-4513, at ¶ 16; Arales v. Furs By Weiss,Inc., Cuyahoga App. No. 81603, 2003-Ohio-3344, at ¶ 43;Crawford v. Rinkes, Monroe App. No. 870, 2002-Ohio-5247, at ¶ 14. Also, Loop testified that he had been in the business of operating "heaving" equipment for more than two decades and that he bought and sold equipment on many occasions. Thus, Loop may have been uniquely qualified to testify as to the equipment's value.
 {¶ 15} Appellants also assert that they presented evidence for different pay-off amounts for various liens on Loop's equipment. Again, this is an issue of weight and credibility and the trial court apparently opted to believe Loop's version of the facts. Next, appellants argue that the trial court's decision is against the manifest weight of the evidence regarding Timothy Hall's and Paul Hall's individual liability to appellees. We agree, albeit to a narrower extent than appellants argue.
 {¶ 16} Loop testified that in January of 1999, the Halls agreed to sell to him one-third of the company in exchange for his equipment. This testimony is sufficient for the trial court to enter judgment against Timothy Hall.[8] The more difficult issue, however, is that the trial court determined that Paul Hall is also liable. As appellees correctly point out in their brief, Loop testified that Paul Hall was present at the January 1999 meeting. This fact could have provided a sufficient basis for the trial court to have found him liable. The trial court, however, disregarded that part of Loop's testimony and found that Paul Hall was "originally . . . not a part of the agreement." Instead, the court based Paul Hall's liability on "accepting all the equipment and taking out a loan to pay off [Loop's] liens[.]" The trial court cites no legal authority to support the view that a single shareholder committing this type of act renders him individually liable on a contract that the corporation or another shareholder enters into. Appellees also cite no authority to support this principle.[9] Generally, a shareholder's acquiescence to a corporate purchase does not render the shareholder liable for that purchase. Such a view runs contrary to the reason for the corporate form of ownership.[10]
 {¶ 17} Moreover, the mere fact that a stockholder, particularly a stockholder in a closely held family corporation, signs off on a loan to pay corporate debt does not make him liable on any other contract. Fifth Third Bank Loan Officer Jay Prosch testified that every member of the Hall family signed the loan that was used, in part, to pay off the liens on Loop's assets. Although the testimony is not entirely clear, it appears that those signatures are personal guarantees to pay the loan. If we adopted the trial court's reasoning (that Paul Hall's personal guarantee of the loan made him personally liable on the contract between Loop and his son), then both Joanne and Terry Hall could also be liable under the oral agreement because they, too, guaranteed the loan. No one seriously contends they should do so. Likewise, Paul Hall's personal guarantee on a loan is insufficient for him to incur liability under the contract.
 {¶ 18} Also, it is uncontroverted that the loan proceeds paid other company debts in addition to the liens on Loop's equipment.[11] Thus, it is difficult to contend that Paul Hall, by guaranteeing the loan, incurred liability under a contract that the trial court concluded he was not a party.
 {¶ 19} For these reasons, appellants are correct that Paul Hall should not have been found personally liable. Furthermore, although we may agree with appellees' view that sufficient evidence exists to support the conclusion that Paul Hall was part of the original contract to sell one-third of the company to Loop, the trial court apparently did not view this evidence in the same light and explicitly determined that Hall was not a party to that contract. We must accept that determination.
 {¶ 20} Appellants' final argument is that the trial court's decision to include Robin Loop as judgment-creditor (along with her husband) is against the manifest weight of the evidence. We agree. We find no evidence to establish that Robin Loop was involved in these proceedings. In fact, on direct examination Loop was asked if his wife was present at the January 1999 meeting when the parties created their oral agreement. He answered in the negative. Robin Loop also confirmed she was not a party to any agreement to buy into Hall Excavation Corporation. She described the extent of her interest as simply being married to Dewayne so "financially I hurt when he hurts." This is insufficient to establish that Robin is a party to the oral agreement.[12]
 {¶ 21} For these reasons, we hereby (1) overrule appellants' first and third assignments of error; (2) sustain appellants' fourth assignment of error insofar as it concerns Paul Hall's liability; (3) overruled appellants' fourth assignment of error insofar as it concerns Timothy Hall's liability and (4) sustain appellants' sixth assignment of error.
 II {¶ 22} Appellants asserts in their second assignment of error that the trial court erred in calculating damages. In particular, appellants contend that the damages award based upon the value of the equipment transferred to Hall Excavation Corporation rather than the value of a one-third ownership interest, actually constitutes an unjust enrichment award and, thus, is impermissible in a breach of contract case.
 {¶ 23} Unjust enrichment entitles a party to the reasonable value of the benefit conferred on the other party. See Girard v.Leatherworks Ptshp., Trumbull App. No. 2004-T-10,2005-Ohio-4779, at ¶ 41; Blue Chip Pavement Maintenance, Inc. v.Ryan's Family Steakhouses, Inc., Clermont App. No. CA2003-09-72, 2004-Ohio-3357, at ¶ 18; Schaste Metals, Inc. v. Tech Heating Air Conditioning, Inc. (Aug. 7, 1997), Cuyahoga App. No. 71589. As appellants point out, a party may not recover for unjust enrichment when an express contract is involved. Shannon v.Lutz (Dec. 11, 1998), Greene App. No. 98CA21; also see Calamari Perillo, Contracts (2nd Ed. 1977) 19-20, § 1-12. When an express contract exists, a party must pursue a breach of contract action. The general measure of damages in a breach of contract case is the amount necessary to put the non-breaching party in the position that the party would have occupied had the breach not occurred. See Osbourne v. Ahern, Jackson App. No. 05CA9,2005-Ohio-6517, at ¶ 21; S.H.Y., Inc. v. Garman, Union App. No. 14-04-04, 2004-Ohio-7040, at ¶ 35.
 {¶ 24} At first blush, we agree that the trial court's judgment could arguably be construed as an unjust enrichment award. The decision analyzes the transferred equipment's value and subtracts the lien values. This tends to supports the argument that the trial court looked to the value of the benefit conferred on Hall's Excavation Corporation when Loop transferred the equipment to the company. We believe, however, that an alternative interpretation exists. Hall's Excavation Corporation is a closely-held business and we find no indication that its shares trade on any exchange. Thus, to determine the 1999 value of its stock, the trial court could not simply look at the trading price, but rather must employ a derivative means to value the stock. See Willman v. Cole, Adams App. No. 01CA725, 2002-Ohio-3596, at ¶ 21. Because neither side used expert testimony to establish the 1999 value of one-third of the company, the court had to comply some method to value the stock.
 {¶ 25} One alternative is the amount the stock would have sold for in an arms-length transaction. The best example of the stock's value may in fact be the sale that Loop and the Halls negotiated. All were experienced in business and work in this particular field. If they agreed that one-third of the company was worth the value of Loop's equipment (less amounts necessary to pay off the liens), this is an acceptable method to value the stock. Although we agree with appellants' the trial court could have been more detailed in explaining its method, we find no error with its compensatory damages calculation.
 {¶ 26} Accordingly, we hereby overrule appellants' second assignment of error.
 III {¶ 27} Appellants assert in their fifth assignment of error that the trial court erred by failing to join Joanne Hall and Terry Hall as indispensable parties under Civ.R. 19.[13] We disagree.
 {¶ 28} First, although trial courts must join indispensable parties, appellants raised this issue in their answer in a vague manner and did not affirmatively identify the "indispensable parties" to this action. The onus should fall on those who assert the absence of indispensable parties to identify those parties and to explain why they are indispensable to the action.
 {¶ 29} Second, we are not persuaded that Joanne and Terry Hall are indispensable parties. The parties' wives were not part of the oral agreement with Dewayne Loop and would not have been liable for any damages. Furthermore, Loop did not seek specific performance of the oral agreement to transfer the stock. Even if Loop had sought specific performance, however, we find no indication that Joanne and Terry Hall were indispensable parties. Nothing in the transcript definitively states (1) how much stock was outstanding in Hall's Excavation Corporation and (2) how much of the outstanding stock the wives owned. The oral agreement with Dewayne Loop was to transfer one-third of the company stock to him. Assuming one hundred (100) shares of stock in the company, divided equally between all four of the shareholders, there was no need to join Joanne and Terry Hall because Timothy and Paul between them had enough to transfer one-third ownership interest (e.g. thirty-three shares out of their combined fifty) to Loop. For these reasons, we find no merit in appellants' fifth assignment of error and it is hereby overruled.
 {¶ 30} Having sustained appellants' sixth assignment of error and part of the fourth assignment of error, we hereby direct the trial court to modify its judgment to delete any reference to judgment entered in favor of Robin Loop and to remove Paul Hall from personal liability. The remainder of the trial court's judgment is hereby affirmed.
Judgment reversed in part and affirmed in part consistent with the opinion.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed in part and reversed in part consistent with the opinion. Appellants shall recover of appellees costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J. McFarland, J.: Concur in Judgment Opinion.
[2] "Hall's Excavation Corporation" is also referred to in the record as "Hall's Excavating Corporation." Because appellants use "Hall's Excavation Corporation" in their assignment of error, we use that name in our opinion.
[3] "Heaving" or earth moving equipment is described as "track hoes, back hoes, dozers, skid loaders" and other such equipment that "mov[e] dirt."
[4] Paul Hall, Timothy Hall's father, testified that Hall's Excavation Corporation has been "a family owned business" since 1971. The Stockholders include Paul, his wife Joanne, their son Timothy, and his wife Terry. No evidence shows the precise amount of stock each individual owns. Appellants argue that "Terry and Joann[e] Hall . . . individually owned shares in the corporation, and together owned a majority of the shares." (Emphasis added.) Appellants cite four separate transcript pages to support that proposition. We, however, have read those pages and find no mention of how much stock any one member of the Hall family owns.
[5] Dewayne Loop claimed that the Halls' intended to have their attorney prepare formal papers to document the sale. Unfortunately, this action did not occur.
[6] The precise relationship between Jason Hall and the other appellants is not entirely clear. Jason testified that one of the Halls is his "great-uncle."
[7] The trial court's calculations took the equipment value as stated by Loop ($372,000), subtracted the liens paid by the Halls ($79,000) and credited the Halls for the value of "clay soil" appellees owed them ($3,618).
[8] Apparently the trial court concluded that Timothy Hall entered into this agreement both individually and as a representative of his family business. The evidence is sufficient, if viewed in that manner, to support that conclusion.
[9] Appellees argue that the evidence established that Paul Hall was a party to the original agreement. Again, we agree that such evidence does appear in the record, but this point is irrelevant. The trial court explicitly found that Paul Hall was not a party to that agreement. We are bound by that determination in the same manner as the trial court's finding that Timothy Hall is a party to the agreement.
[10] Appellants argue that, in essence, the trial court pierced the corporate veil to hold appellants individually liable. The trial court, however, did not indicate that this is what it did.
[11] Prosch testified that the loan amount was $225,000. The Halls used $100,000 to pay off liens on Loop's equipment.
[12] Appellees argue that Robin and Dewayne both testified that they owned the equipment transferred to Hall Excavation Corporation. However, they do not cite a specific portion of the transcript where this testimony can be found. Even assuming arguendo that Robin Loop co-owned the equipment, the recovery in this case is for breach of contract (not quasi contract, conversion or fraud). All of the evidence indicates that Dwayne Loop and the Halls entered into the oral agreement.
[13] Civ.R. 19(A) requires a trial court to join as a party anyone in whose "absence complete relief cannot be accorded among those already parties" to the action. Appellants did not file a motion to join Joanne and Terry Hall but, in their answer, they asserted that appellees failed to join "indispensable parties." Generally speaking, the assertion of such a defense in an answer is sufficient to raise the issue. See Civ.R. 12(B)(7) and Civ.R. 19(A).