OPINION
{¶ 1} Plaintiffs-appellants, Emery Martin and his family, appeal from two Carroll County Common Pleas Court judgments, the first granting defendants-appellees', Robert and Nancy Mizerik's, motion for dismissal and the second finding in favor of defendant-appellee, Lake Mohawk Property Owner's Association (the Association), on the issue of damages.
 {¶ 2} This case has already been before this court once. Martin v.Lake Mohawk Property Owner's Assn., 7th Dist.04-CA-815, 2005-Ohio-7062. The facts as stated therein are as follows.
 {¶ 3} "Five members of the Martin family are owners of a house on Lot 1043 which fronts Lake Mohawk in Carroll County. The lake's high water line is 154 feet from the closest point of the Martin's home. The Mizeriks purchased Lot 1042 in order to construct a lake front residence. Both lots are 295 feet deep. Lot 1041, on the other side of the Mizeriks' new property, is vacant.
 {¶ 4} "The Mizeriks wanted to build an L-shaped house that was physically sixty-two feet deep at its deepest point. And, they wished to build it a mere ninety-four feet from the lake's high water mark; more than fifty feet closer to the lake than the Martins' house. However, the Association's building code contains a restriction that applies to all structures and reads as follows:
 {¶ 5} "`Any new residence or remodeling must be positioned on the property so as to vary 10 feet or less in depth from it's [sic] neighboring residences. See exhibit for formula.' Section (A)(6)(c).
 {¶ 6} "The exhibit incorporated into this restriction is entitled, `New Residence Depth.' A formula is listed for lake front property in order to determine the minimum distance from the nearest part of the structure to the high water line. The example use of the formula assumes that there are two existing houses, House A and House C, and solves for the new house to be constructed between the existing houses. An example shows House A at 80 feet from the high water line and House C at 100 feet from the high water line. Using these figures, the formula proceeds: House A 80 + *Page 3 
House C 100 = 180 ÷ 2 = 90 — 10 = 80, meaning the new house must be at least 80 feet from the high water line.
 {¶ 7} "In February 2003, the Mizeriks wrote a letter to the Association noting that the Association's building inspector did not believe their plans fit with the present 10 foot allowance. They thus asked for a variance. In April 2003, the Association responded that a variance would not be necessary as long as the Mizeriks constructed their house at least 92 feet from the high water line of the lake. To arrive at this number, the Association applied the formula even though Lot 1041 was vacant. The Association imputed a distance from the water of 50 feet for the vacant lot merely because that is the absolute minimum distance a house can be from the water line as per the lake's warranty deed. Thus, their application of the formula proceeded as follows: `154 ft + 50 ft = 204 ÷ 2 = 102 — 10 = 92 ft.'
 {¶ 8} "A copy of the Association's response was sent to the Martins. An attorney for the Martins immediately responded that the formula had been misconstrued and asked that they be permitted to present their objections at a board of directors meeting. The parties met with the community manager at the building site in May 2003. In a follow-up letter, the Martins advised that they were considering the request to compromise on the shorter minimum distance from the water line but they wanted to see plans to determine how high the Mizeriks' house would rise in their view.
 {¶ 9} "Regardless, a building permit was issued on May 3, 2004, and the Mizeriks began construction. When the Martins realized that the Mizeriks still intended to place the closest portion of their house 94 feet from the high water mark, they complained. The Association ordered that construction stop, but then changed its mind after complaints from the Mizeriks' builder.
 {¶ 10} "On May 14, 2004, Emery and Patricia Martin filed a complaint for a preliminary and permanent injunction against the Mizeriks and the Association. On June 9, 2004, the court held a hearing on the request for a preliminary injunction. *Page 4 
The Martins called the Association's building inspector to testify. When questioned about the restriction containing the ten foot depth variation, he stated:
 {¶ 11} "`I have applied the formula to all residences. * * * You can't go by the formula and the paragraph. They, they would sort of contradict each other. Quite honestly, I didn't even know it said 10 feet or less.' (06/09/04 Tr. 17).
 {¶ 12} "Due to the court's time restraints, this was the only witness. The court concluded that it had not heard enough to grant or deny a preliminary injunction but they were out of time for the day. (06/09/04 Tr. 44). The court then advised that it was combining the preliminary injunction hearing with an accelerated merits hearing for the permanent injunction as per Civ.R. 65(B)(2). This hearing was set for June 16, 2004.
 {¶ 13} "* * *
 {¶ 14} "Finally, the trial was held on November 19, 2004. After the Martins presented their case in chief, the defense filed a Civ.R. 41(B)(2) motion to dismiss. The court orally granted the motion. * * *
 {¶ 15} "When addressing the permanent injunction, the court found it significant that the Mizeriks' residence was essentially complete and that the Martins failed to seek a temporary restraining order and never obtained the preliminary injunction. The court noted that it would not order a house to relocate where provisional relief could have been timely achieved if proper. The court concluded that the issuance of a permanent injunction at this time would be inequitable due to the passage of time and change in circumstances.
 {¶ 16} "In addition, the court concluded that the formula in the code had been properly applied and that it incorporated the ten foot depth restriction. The court noted that the variance committee and the building inspector independently arrived at decisions that the placement complied with the formula. Thus, the court found the actions for permanent injunction and for monetary damages both failed." Id. at ¶ 3-16. *Page 5 
 {¶ 17} This court found that the ten-foot depth restriction and formula were unambiguous and that the Mizeriks violated the restriction when they built their house with more than a ten-foot depth differential from the Martins' house. Id. at ¶ 32-33. We further concluded, however, that the court did not err in denying the Martins' request for a permanent injunction ordering the Mizeriks to demolish their house and rebuild. Id. at ¶ 54. We found that the Martins' diminished lake view and lack of privacy caused by the location of Mizeriks' house could be compensated monetarily. Id. at ¶ 52. Finally, we concluded that the trial court erred in disallowing the Martins the time to present expert realtor testimony to establish their damages. Id. at ¶ 90. Therefore, we affirmed in part, reversed in part, and remanded the matter to the trial court for a hearing solely on the amount of damages. We had found that the Martins suffered some damages for loss of privacy and partial loss of a lake view with a substituted view of the back of a house and driveway.
 {¶ 18} The trial court set the matter for a hearing. The Association and the Mizeriks filed motions in limine asking the court to exclude any evidence of attorney's fees and costs and any evidence of damages other than the value of the Martins' property before the construction of the Mizeriks' house and the value of the Martins' property after the construction of the Mizeriks' house. The court denied the motion regarding attorney's fees and costs and granted the motion regarding other evidence of damages. It allowed the Martins to proffer for the record the evidence they would have presented.
 {¶ 19} The court subsequently held the damages hearing. At the conclusion of the Martins' case-in-chief, the Mizeriks moved for a dismissal pursuant to Civ.R. 41(B)(2). The court took the motion under advisement and later granted it at the conclusion of the evidence. It found that the Martins, in their complaint, never asserted a claim against the Mizeriks for money damages.
 {¶ 20} The court later entered judgment in favor of the Association finding that the Martins failed to prove that they were entitled to any damages. It stated that the *Page 6 
Martins did not prove that their privacy was diminished or that their property value had decreased due to the construction of the Mizeriks' home.
 {¶ 21} The Martins filed a timely notice of appeal on December 19, 2006.
 {¶ 22} The Martins raise four assignments of error, the first of which states:
 {¶ 23} "THE TRIAL COURT ERRED WHEN IT REFUSED TO CONSIDER PLAINTIFF'S [sic] `COST TO CURE' EVIDENCE FOR DAMAGES."
 {¶ 24} The trial court refused to consider the Martins' "cost-to-cure" evidence. This evidence included estimates of what it would cost to move the Martins' home forward in order to restore their view of the lake. The court granted the Mizeriks' and the Association's motion in limine to limit the Martins' evidence only to the difference in the market value of their property before and after the completion of the Mizeriks' home. The court allowed the Martins to proffer their cost-to-cure evidence for the record.
 {¶ 25} The Martins note that they asserted a claim for breach of contract. They argue that the standard remedy in a breach of contract case is specific performance. Because specific performance in this case is impossible or impracticable, they argue that equivalent money damages are warranted. Therefore, they assert that the court should have considered their evidence as to what it would cost to move their house to improve their lake view. The Martins argue that moving their house forward is the closest they can get to being placed in the same position they would have been had the Mizeriks not breached the housing restriction.
 {¶ 26} The general rule for measuring damages to real property is found in Ohio Collieries Co. v. Cocke (1923), 107 Ohio St. 238,140 N.E. 356, paragraph five of the syllabus:
 {¶ 27} "[I]f the injury [to the property] is of a permanent or irreparable nature, [the owner is entitled to recover] the difference in the market value of the property as a whole, including improvements thereon, before and after the injury. If restoration can be made, the measure of damages is the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury *Page 7 
and the restoration, unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury, in which case the difference in the market value before and after the injury becomes the measure."
 {¶ 28} In this case, the Martins proffered their cost-to-cure evidence. They presented the testimony of H.B. Kazak, who testified as to the cost to move the Martins' house approximately 70 feet forward to restore their view of the lake. Kazak testified as to all of the costs that would be involved in moving the Martins' house including the actual cost of moving the structure, the masonry work, the sewer work, the permits, etc. The total of all of the costs would be approximately $156,000. (Tr. 25, 32-38; Ex. 19A-19G).
 {¶ 29} As we will see later, the value of the Martins' house before the Mizeriks built and the value of the Martins' house after the Mizeriks built diminished anywhere from $33,750 to $125,000. Thus, the evidence demonstrated that the most the difference in market value was of the Martins' house before and after the injury was $125,000. Because the cost of restoration exceeds the difference in market value before and after the injury, the difference in market value is the proper measure of damages pursuant to Ohio Collieries, supra.
 {¶ 30} Furthermore, in their amended complaint, in addition to a claim for irreparable harm to their property, the Martins raised a breach of contract claim and requested an award of damages, "including any diminution in the market value of their home and lot, their attorneys [sic] fees and costs to be paid by the [Association]."
 {¶ 31} The Martins contend that because specific performance in this case is impossible, moving their house to improve their view is the next best thing. However, the Martins never alleged in their amended complaint that they were entitled to "cost-to-cure" damages so that they could move their house.
 {¶ 32} The cost-to-cure damages in this case are special damages. "`Special damages' are damages of such a nature that they do not follow as a necessary consequence of the injury complained of." Gennari v.Andres-Tucker Funeral Home, *Page 8 Inc. (1986), 21 Ohio St.3d 102, 106, 488 N.E.2d 174. A party must specifically state special damages in the complaint. Civ.R. 9(G). Moving an entire house does not follow as a necessary consequence from a breach of the Association rules. Instead, it is more likely that if a breach occurred, damages could be recovered for the loss of value to the property and/or specific performance of the contract.
 {¶ 33} In general, specific performance can be awarded if there was a valid enforceable contract that was breached. Shaffer v. Shaffer, 3d Dist. No. 8-05-18, 2006-Ohio-1997, at ¶ 25. However, courts will not issue a decree of specific performance where such performance is impossible. Settles v. Invesco Real Estate Partnership (Dec. 4, 1989), 12th Dist. No. CA89-03-047. In those cases, an award of damages may be warranted. Id.
 {¶ 34} In Martin, 2005-Ohio-7062, at ¶ 54, we found that "the harm incurred by demolition of the home and displacement of its residents is disproportionate to the harm incurred by the existing construction's effect of a diminished view and lack of privacy." Therefore, we concluded that the trial court did not err in denying an injunction with orders to demolish and relocate the Mizerik residence. Thus, we found specific performance of the contract in this case to be unreasonable and determined that the Martins could be compensated monetarily.
 {¶ 35} "The general measure of damages in a breach of contract case is the amount necessary to put the non-breaching party in the position that the party would have occupied had the breach not occurred." Loop v.Hall, 4th Dist. No. 05CA3041, 2006-Ohio-4363, at ¶ 23. In this case, had the Mizeriks not built their house in violation of the ten-foot rule, the value of the Martins' house would have remained the same. But because the Mizeriks did not comply with the ten-foot rule, their house now obstructs the Martins' view of the lake. This diminished lake view decreased the value of the Martins' property. Thus, under this breach of contract theory, the measure of damages is the same as the general rule for damages to real property. The Martins are entitled to the difference in the value of their house before the Mizeriks built and the value of their house after the Mizeriks built. This will put *Page 9 
the Martins in the same position monetarily as they would have been had the Mizeriks not built their house in violation of the ten-foot rule.
 {¶ 36} Therefore, the trial court did not err in disallowing the Martins from presenting cost-to-cure evidence. Accordingly, the Martins' first assignment of error is without merit.
 {¶ 37} The Martins' second assignment of error states:
 {¶ 38} "EVEN IF DEFENDANTS' LIABILITY WERE BASED SOLELY ON TORTIOUS INJURY TO REAL PROPERTY, THE TRIAL COURT ERRED WHEN IT FAILED TO RECOGNIZE THAT THE MARTIN HOME QUALIFIES AS AN EXCEPTION TO THE GENERAL DAMAGES RULE."
 {¶ 39} Here the Martins argue that even if the general rule as stated in Ohio Collieries, supra, applies, two exceptions apply to their situation.
 {¶ 40} First, they argue that equity can require an exception when the general damages rule does not fully compensate the injured party. Second, the Martins argue that restoration costs may be recovered in excess of diminution of market value when the injured party intended to use the property for residential or recreational purposes. They contend that they provided evidence of the unique aspect of the injury to their property as demonstrated by Plaintiff's Exhibits 31 and 32, which are photographs of the view of the lake from their house before and after the construction of the Mizeriks' house. Before the construction of the Mizeriks' house, the Martins' view was looking out into trees with a full view of the lake through the trees. After the construction, their view is now of the Mizeriks' house and a small portion of the lake.
 {¶ 41} In reply, the Mizeriks argue that an exception to the general rule of damages may not be taken until the plaintiff first proves the value of their property before and after the injury to their property. Because they allege that the Martins failed to establish "before" and "after" values for their property, the Mizeriks argue that the Martins cannot move on to apply an exception. *Page 10 
 {¶ 42} As will be discussed below, the Martins did offer evidence to establish approximate before and after values for their home by way of two witnesses' testimony. Thus, the Mizeriks' argument on this point must fail.
 {¶ 43} The Martins argue that because they intended to use their property for recreational and residential purposes, they were entitled to recover restoration costs in excess of the diminution in value. They rely on Coldsnow v. Hartshorne, 7th Dist. No. 01-CO-65, 2003-Ohio-1233,Fantozzi v. Henderson, 8th Dist. No. 87270, 2006-Ohio-5590, and Apel v.Katz (1998), 83 Ohio St.3d 11, 697 N.E.2d 600, for support.
 {¶ 44} In Coldsnow, 2003-Ohio-1233, this court held that in a case involving a violation of R.C. 901.51, which prohibits anyone from cutting down trees on another's property, restoration/replacement cost of the trees is a proper measure of damages when the injured party intended to use the property for residential or recreational purposes, according to their personal tastes and wishes. Id. at ¶ 9. Because the plaintiff in that case used his property for recreational purposes, we concluded that he was not required to first show a diminution in value of the land before receiving restoration damages. Id. Additionally, when the defendant attempted to rely on a case that did not deal with a R.C.901.51 claim and instead dealt with fraud in selling a home, we stated that the case was "completely inapplicable." Id. at ¶ 22.
 {¶ 45} In Fantozzi, 2006-Ohio-5590, the Hendersons filed a counterclaim for trespass and an R.C. 901.51 violation. They argued that the Fantozzis trespassed onto their property, cut down their trees, regraded a portion of their property, and erected a fence on their property. The trial court ruled in favor of the Fantozzis and the Hendersons appealed. The Eighth District noted that an exception applied to the general rule of damages providing "that restoration costs may be recovered in excess of diminution in fair market value when real estate is held for noncommercial use, when there are reasons personal to the owner for seeking restoration, and when the diminution in fair market value does not adequately compensate the owner for the harm done." Id. at ¶ 17. However, the court did not apply the exception because *Page 11 
the Hendersons did not demonstrate that they used the injured area of their property. Id. at ¶ 18.
 {¶ 46} In Apel, 83 Ohio St.3d 11, a case involving damages for trespass arising from a dispute over an easement, the Apels argued that the trial court erred by not instructing that the Katzs' damages were limited to the diminution in fair market value of the property caused by the Apels' conduct. The Ohio Supreme Court disagreed and stated that some flexibility in the general rule is permissible in the ascertainment of damages suffered in the appropriate situation. Id. at 20.
 {¶ 47} These cases all involved actions to recover damages for injury to real property as the result of trespass. Two of them involved cutting down trees belonging to a neighboring property owner and the other involved a roadway over the property. In this case however, there was no trespass and no physical damage. The damage was limited to a blocked lake view resulting from construction on the Mizeriks' property. The Mizeriks never trespassed onto or physically damaged the Martins' property. Thus, these cases are distinguishable. In fact, this court stated in our previous decision, "actual encroachment upon a neighbor's property is much more violative of property rights than the alleged violation of a depth variant restriction." Martin, 2005-Ohio-7062, at ¶ 52. The Martins have cited to no cases where the cost to cure is an appropriate measure of damages when there is no encroachment on the neighbor's land. Accordingly, the Martins' second assignment of error is without merit.
 {¶ 48} The Martins' third assignment of error states:
 {¶ 49} "THE TRIAL COURT ERRED IN FAILING TO AWARD DAMAGES TO PLAINTIFFS."
 {¶ 50} The Martins argue that the trial court erred in determining that they were not entitled to damages. They first assert that the trial court failed to follow the law of the case because the trial court found that they were not entitled to damages after this court stated that they were entitled to some damages. *Page 12 
 {¶ 51} The law of the case doctrine provides that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Nolan v. Nolan (1984), 11 Ohio St.3d 1,3, 462 N.E.2d 410.
 {¶ 52} In our previous decision, this court stated: "[I]t is clear that the Martins' suffered some damages for loss of privacy and partial loss of a lake view with a substituted view of the back of a house and a driveway. The question remains as to the amount of their damages."Martin, 2005-Ohio-7062, at ¶ 91. We determined that the Martins were entitled to some damages. We remanded this case so that the court could determine what amount of damages the Martins were entitled to. Per our decision, it became the law of the case that the Martins were entitled to some amount of damages.
 {¶ 53} At one point during the damages hearing, the trial court stated: "This case was reversed solely for the purpose of determining an amount of damages, if any, that are appropriate." (Tr. 205; Emphasis added.) And in its findings of fact and conclusions of law, the court found that the Martins did not prove that their property value had been diminished. By these statements, the trial court ignored this court's determination that the Martins were in fact entitled to some damages. And by awarding no damages to the Martins the trial court further ignored our previous decision.
 {¶ 54} Because the trial court failed to award the Martins any damages, we will move on to consider the evidence presented. Three witnesses' testimony is relevant here: Glenn Miller, Patricia Martin, and Staci Kamp.
 {¶ 55} Miller is a real estate appraiser and a former realtor. Miller opined that when the Mizeriks built their house, the Martins lost 45 percent of their lake view. (Miller Tr. 38). He stated that this loss of view resulted in a decrease in value because potential buyers of lakefront property want a good view. (Miller Tr. 39). According to Miller, the blockage by the Mizerik house resulted in a $75,000 decrease in the Martins' property value. (Miller Tr. 51). *Page 13 
 {¶ 56} Miller based his opinion on the sale of a comparable house to the Martins' house, known as 180 Cheyenne Trail, and other comparable houses with a limited lake view and without a lake view. (Miller Tr. 16). Miller took these comparable sales and then made monetary adjustments to them to make them as similar as possible to the subject property, which in this case was 180 Cheyenne Trail. (Miller Tr. 20). He made an adjustment to those properties that did not have any lake frontage in the amount of $75,000. (Miller Tr. 20-21). Miller stated that he used the value of $75,000 based on "market experience" and the statistical data contained in his report. (Miller Tr. 70, 107-108). Miller used recently sold houses to reach his opinion as to the value of the damage to the Martins' property because these houses had been tested on the open market. (Miller Tr. 24). Miller also visited the Martin property to observe their view. (Miller Tr. 38). However, Miller did not conduct an actual appraisal of the Martins' house. (Miller Tr. 44, 61).
 {¶ 57} Miller testified that in his opinion, the Martins' house was worth $422,500 before the Mizeriks built their house. (Miller Tr. 48). He based this opinion on the fact that 180 Cheyenne Trail, a very similar property, sold for this amount. (Miller Tr. 48, 50). Miller further opined that after the Mizeriks built their house, the Martins' house was worth $347,500. (Miller Tr. 54-55). He attributed the reduction in value to the lake view obstruction caused by the Mizeriks' house. (Miller Tr. 55).
 {¶ 58} Staci Kamp, a real estate appraiser, testified for the Mizeriks and the Association. She opined that Miller's opinion was not valid because he failed to follow federal guidelines in making his adjustments. (Tr. 319-320). She stated that Miller made adjustments to his comparables that exceeded 100 percent when the guidelines state that the comparable should not be used if the adjustment exceeds 25 percent. (Tr. 321).
 {¶ 59} The court also considered Mrs. Martin's testimony. Mrs. Martin is one of the parties and is also a realtor. Under the owner-opinion rule, an owner is permitted to testify concerning the value of her property without being qualified as an expert because she is presumed to be familiar with it from having purchased or dealt *Page 14 
with it. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 605 N.E.2d 936, at paragraph two of the syllabus. The weight to be given to the owner's opinion is for the trier of fact.Wurzelbacher v. Colerain Twp. Bd. of Trustees (1995),105 Ohio App.3d 97, 100, 663 N.E.2d 713.
 {¶ 60} Mrs. Martin testified that she did a market analysis for her property using three comparable properties that had recently sold, including 180 Cheyenne Trail. (Tr. 76-77). Mrs. Martin testified that she believed that the value of her property before the Mizeriks built their house was approximately $425,000. (Tr. 100-101, 189). However, after the Mizeriks built their house, Mrs. Martin opined that her house was now worth approximately $299,000 to $325,000. (Tr. 101, 189). In other words, Mrs. Martin opined that the construction of the Mizerik home diminished the value of her property by approximately $100,000 to $125,000. (Tr. 101, 189).
 {¶ 61} Finally, the court considered Kamp's testimony. She looked at all of the properties she could find on Lake Mohawk that had recently sold, regardless of value. (Tr. 295). She also observed the Martin and Mizerik homes. (Tr. 299). Kamp concluded that the construction of the Mizerik home did not decrease the value of the Martin home. (Tr. 307-308). In fact, she opined that because the Mizeriks removed trees from their property that were blocking the Martins' lake view, the Mizeriks actually increased the value of the Martin home. (Tr. 307-308, 309). However, she then stated that in her opinion, the Mizeriks' home did not affect the value of the Martins' home. (Tr. 310). In reaching her opinion, Kamp did not evaluate the Martins' property with any comparable properties. (Tr. 332-33, 335).
 {¶ 62} Miller opined that Kamp's opinion and report were not useful in this case because she did not evaluate the damage to the Martins' property based on other specific comparable sales in the Lake Mohawk area. (Miller Tr. 27). He opined that Kamp's report was simply a "generic narrative" of Lake Mohawk properties. (Miller Tr. 27).
 {¶ 63} Based on this evidence, the trial court made the following conclusions. It concluded that Mrs. Martin's opinion was speculative at best because she admitted *Page 15 
that she never entered onto her comparable properties to view the lake and, therefore, her owner-opinion was flawed. For this reason and because she was a co-plaintiff with a direct interest in this case, the court stated that it placed no weight on Mrs. Martin's opinion. The court further stated that it placed no weight on Miller's testimony. It reasoned that Miller stated that the Martin property would be worth $75,000 less with no lake view at all. It further pointed out that Miller stated that he was retained in order to establish the value of the lake view and did not conduct an appraisal of the Martin property. The court stated that Miller's testimony did not establish the value of the Martins' property immediately before and after the construction of the Mizeriks' home. Thus, the court concluded that the Martins failed to carry their burden of proof as to damages.
 {¶ 64} Generally a reviewing court will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion. Kaufman v. Byers, 159 Ohio App.3d 238, 823 N.E.2d 530,2004-Ohio-6346, at ¶ 37. Abuse of discretion connotes more than an error of law; it implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 65} In this case, the trial court abused its discretion in deciding not to award any damages to the Martins. As noted above, in our previous decision this court determined that the Martins were entitled to some monetary damages. However, the trial court awarded them nothing.
 {¶ 66} Furthermore, although the Association argues that the Martins failed to present any evidence of the value of their house before and after the Mizeriks built, this simply is not true. While the Martins did not present an appraisal value of their home before and after the Mizeriks built, they did submit testimony by two witnesses as to the before and after values. Both Miller and Mrs. Martin testified as to the approximate values before and after the Mizeriks built their house. Miller testified that the Martin house was worth $422,500 before the Mizeriks built and $347,500 *Page 16 
after the Mizeriks built. And Mrs. Martin testified that her house was worth approximately $425,000 before and $299,000 to $325,000 after.
 {¶ 67} Additionally, the trial court stated that it would not give any weight to Miller's testimony because Miller testified that he valued a lake view at $75,000. He then stated that this was the amount that the Martins were damaged by the Mizeriks obstructing their view, even though the Martins retained a partial lake view. While the trial court may have determined that Miller's computation was flawed, it should not have completely disregarded his testimony. It could have determined what 45 percent of the $75,000 figure was and awarded the Martins that amount since Miller stated that the Martins' view was reduced by 45 percent.
 {¶ 68} For these reasons, the trial court abused its discretion in determining that the Martins were not entitled to any damages.
 {¶ 69} Finally, the Martins contend that they also presented sufficient evidence that the court should have awarded them attorney's fees and costs. They assert that both the Mizeriks and the Association acted with bad faith and malice. The Martins claim that when the Mizeriks were faced with this lawsuit and a potential injunction, they went ahead with the construction of their home in conscious disregard of the Martins' rights. And as to the Association, the Martins assert that it failed to enforce its own restrictions and allowed itself to be intimidated by the Mizeriks' general contractor.
 {¶ 70} The standard of review on the issue of attorney fees is abuse of discretion. Motorists Mut. Ins. Co. v. Brandenburg (1995),72 Ohio St.3d 157, 160, 648 N.E.2d 488.
 {¶ 71} It is well-settled law that if there is no statutory provision for attorney fees, the prevailing party is not entitled to fees under the American rule unless the party against whom the fees are to be assessed is found to have acted in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons. Sharp v. Norfolk W. Ry.Co. (1995), 72 Ohio St.3d 307, 314, 649 N.E.2d 1219, citing Sorinv. *Page 17 Warrensville Hts. School Dist. Bd. Of Edn. (1976), 46 Ohio St.2d 177,181, 347 N.E.2d 527.
 {¶ 72} In this case, there is no statutory provision for attorney fees. Therefore, unless the Martins proved that the Association and the Mizeriks acted in bad faith, or in the other manners listed above, then they were not entitled to attorney fees. The following evidence is relevant.
 {¶ 73} When asked whether she believed the Association acted with the intent to injure her, Mrs. Martin responded, "[t]hey wouldn't have known by acting in the manner that they did that the result would be we would be injured." (Tr. 152). And in her deposition, which was brought out at the hearing, Mrs. Martin stated, "I don't believe that they [the Association] maliciously figured to make us miserable." (Tr. 154). And Mrs. Martin testified that before the Mizeriks began construction, the parties had a meeting to go over the facts and try to work out a reasonable solution. (Tr. 181).
 {¶ 74} Additionally, Scott Noble, the manager of the Association, testified. He stated that when the Association applied its formula for the depth variance, it applied the same practice in this case as it had in every other instance. (Tr. 243). Noble also testified that when he learned that the Martins had continuing issues with the Mizeriks' construction, he asked the Mizeriks' contractor to halt construction for two weeks before the foundation had even been laid. (Tr. 241-42).
 {¶ 75} This testimony supports the court's decision not to award attorney fees to the Martins. The evidence demonstrates that the Association did not apply its formula any differently in this case than it had in other cases. Furthermore, when the Association became aware of the Martins' continuing objection to the construction, Noble attempted to delay construction in order to give the parties time to reach an agreement. And Mrs. Martin herself testified that she did not believe that the Association acted with the intent to harm her.
 {¶ 76} Additionally, the Martins presented little, if any, evidence that the Mizeriks acted in bad faith. Before commencing construction, the Mizeriks were a *Page 18 
party to the meeting to try to work out a solution with the Martins. Furthermore, when the Mizeriks began construction, they had the proper permits and the permission of the Association. And while the Martins had instituted this lawsuit, no temporary injunction or other court order was in place that would restrict the Mizeriks from proceeding with construction. Given these facts, it was not unreasonable for the trial court to deny the Martins' request for attorney fees and costs.
 {¶ 77} Accordingly, the Martins' third assignment of error has merit as it relates to damages. It is without merit as it relates to attorney fees and costs.
 {¶ 78} The Martins' fourth assignment of error states:
 {¶ 79} "THE TRIAL COURT ERRED WHEN IT DISMISSED DEFENDANTS ROBERT AND NANCY MIZERIK PURSUANT TO CIV.R. 41 (B)(2)."
 {¶ 80} Here the Martins once again argue that the trial court did not follow the law of the case. They point out that in their previous appeal they raised the issue of the Mizeriks' Civ.R. 41(B)(2) dismissal. This court reversed that aspect of the trial court's judgment and remanded the matter for a damages hearing. Thus, the Martins argue that the trial court was limited to determining the amount of damages that they were owed and could not dismiss the Mizeriks.
 {¶ 81} The Martins next contend that their amended complaint in which they sought "such other equitable relief as the Court may determine is just under the circumstances," was sufficient to put the Mizeriks on notice that they were seeking any appropriate remedy, including monetary damages.
 {¶ 82} An appellate court reviews a trial court's decision to dismiss a complaint under Civ.R. 41(B) for an abuse of discretion. Knight v.Nowak, 9th Dist. No. 04CA008564, 2005-Ohio-2302, at ¶ 13.
 {¶ 83} In Martin, 2005-Ohio-7062, the Martins appealed the Civ.R. 41(B)(2) dismissal of both the Association and the Mizeriks. At that time, the trial court dismissed the Mizeriks, along with the Association, because it found that they properly applied the formula and did not violate the ten-foot depth restriction. We reversed, finding that they improperly applied the formula and violated the depth *Page 19 
restriction. However, we determined that the trial court did not err in denying injunctive relief. After our reversal, both the Association and the Mizeriks were reinstated as defendants in this case.
 {¶ 84} This time the trial court dismissed the Mizeriks because it found that the Martins' claim for money damages was asserted only against the Association and not the Mizeriks. The court found that in their amended complaint the Martins asserted one claim for an injunction/equitable relief against the Mizeriks and the Association and a second claim for breach of contract and money damages against only the Association.
 {¶ 85} Civ.R. 54(C) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings." However, the Ohio Supreme Court has stated: "Under Civ.R. 54(C), a party is not limited to the relief claimed in the pleadings, except when judgment by default is entered or when a judgment for money is sought and awarded." Raimonde v. Van Vlerah (1975), 42 Ohio St.2d 21,325 N.E.2d 544, at paragraph three of the syllabus.
 {¶ 86} In their amended complaint, the Martins asserted two claims, the first for injunctive relief and the second for breach of contract. In their prayer for relief, the Martins requested:
 {¶ 87} "[A] permanent injunction * * * which will require that the Mizeriks relocate their new construction * * *; for their attorneys [sic] fees, costs and costs [sic.]; and, for such other equitable relief as the Court may determine is just under the circumstances. If the Court determines that for some reason the LMPOA [the Association] Building Codes are not enforceable in this instance, the Martins request an award of adequate damages including any diminution in the market value of their home and lot, their attorneys [sic] fees and costs to be paid by the LMPOA [the Association]."
 {¶ 88} Additionally, in the body of their claim against the Mizeriks, the Martins asserted "[t]he Mizeriks' new construction will cause irreparable harm to the Martins" *Page 20 
and "the Mizeriks' new construction will considerably diminish the value of the Martins' property." (Amended complaint ¶ 6).
 {¶ 89} These statements in the Martins' complaint coupled with their claim for "such other equitable relief" was sufficient to constitute a claim for money damages against the Mizeriks. Furthermore, this court already determined that the Mizeriks were to be reinstated as defendants in this case as it proceeded to a damages hearing. Thus, the trial court should not have granted the Mizeriks' Civ.R. 41(B)(2) motion.
 {¶ 90} Accordingly, the Martins' fourth assignment of error has merit.
 {¶ 91} For the reasons stated above, the trial court's judgment is hereby affirmed in part, reversed in part, and remanded. The court's judgment denying attorney's fees and costs is affirmed. The court's judgment dismissing the Mizeriks is reversed. The Mizeriks are reinstated as defendants in this case. The court's judgment finding that the Martins are entitled to no damages is reversed. The matter is hereby remanded so that the trial court can determine the appropriate amount of damages to which the Martins are entitled.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1